J. R. BUCKWALTER LUMBER CO. *v.* WRIGHT *et ux.*

(Division B. Feb. 9, 1931.)

[132 So. 447. No. 29208.]

472

W. W. Pierce and Richardson, Pierce & Sanford, of Philadelphia, for appellants.

J. V. Gipson, of Meridian, and **A. B. McCraw** (of McCraw & Gipson), of Philadelphia, for appellee.

Argued orally by **W. W. Pierce**, for appellants, and by **J. V. Gipson**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

J. A. Wright and his wife, Mrs. J. A. Wright, filed a suit against the J. R. Buckwalter Lumber Company and L. C. Ethridge and Tom Moran for the actual value, and the statutory penalty of fifteen dollars per tree for fifty-two pine trees alleged to have been carelessly, negligently, and willfully cut without authority of law, and without permission or authority of the plaintiffs, upon certain lands described in the bill. The defendants pleaded the general issue. The proof for the plaintiffs failed to show that Mrs. J. A. Wright did not consent to the cutting of the timber. There was also a dispute as to the boundary line between the land of J. A. Wright and the land upon which Buckwalter had purchased the timber, the land owned by Wright being in section 23 and the land upon which Buckwalter Lumber Company claimed to have cut the timber being in section 26. It appears that there have been two or three different sur-

veys of the line, and that there was a dispute as to where the sections' corners were. Some twelve or fifteen years prior to the cutting involved here, the Buckwalter Lumber Company had cut some timber on the land contended for by it, but had not cut and removed all of the timber. At the time the Buckwalter Lumber Company bought the timber on the land in section 26, adjacent to the land owned by Wright, it sent a surveyor to locate the boundary line, and the surveyor claimed that he located the government corner and ran the line and found witness trees and surveyor's marks along the route which he traced, showing the line contended for by the Buckwalter Lumber Company was the established government line.

Other witnesses testified for the plaintiffs that the line had been run at other points by other surveyors, and that a certain stob was recognized by people in the community as the government corner and by the owners of the adjacent land. The plaintiff had the county surveyor to survey the land after the notice to Ethridge and Moran and to the Buckwalter Lumber Company not to cut the timber on the disputed strip. This surveyor did not find any corner established by the field notes and did not find any government marks indicated by the field notes, but began his survey at what was represented as being a section corner between sections 23 and 26 and ran a line from that point one mile and failed to strike the section corner recognized in the community at that point; but found that he was two hundred eighty chains away from such corner. He then testified that he divided the distance so as to make it equal. He did not testify as to when he had tested his compass or that it was known to be correct. He had the field notes but did not find any of the markers indicated thereon.

In testifying as to when the timber was cut, the plaintiff J. A. Wright stated that it occurred in 1926, the suit being filed in 1929. Testimony of other witnesses tended to show that the timber was freshly cut in 1929, and that

Wright went into possession of the land in December, 1928, and that the cutting occurred while he was in such possession. It is contended that the figure "1926" is a mere typographical error, and that the other testimony shows it to be such. It is the duty of the parties to an appeal to this court to examine the stenographer's notes when they are filed, to see whether they are correct or not, and if no corrections are suggested the notes are assumed to be correct on appeal. We do not decide whether the record is sufficient to show whether there was a clerical error in copying these figures which may have been overlooked, but assuming that the jury thought from the evidence that the cutting was within one year from date of filing suit, the case must nevertheless be reversed because there is no proof of the nonconsent of one of the coplaintiffs, Mrs. J. A. Wright, to cutting the timber.

This court has expressly held, in the case of Bollinger-Franklin Lumber Company v. Tullos et al., 124 Miss. 855, 87 So. 486, that in order to recover the statutory penalty the plaintiff must allege and prove the nonconsent of all of the plaintiffs. The appellee seeks to obviate the effect of this decision by contending that a wife could not affect the husband's rights by consenting to the removal of the timber, as the title was in the husband, and the wife was joined merely because she had a veto power to prevent the sale of the timber without her consent. The declaration alleged the wife to be a joint owner, and the judgment was taken jointly in favor of the husband and wife. There was no offer to amend. It is true the deed was in the name of J. A. Wright, but, as held in the case above cited, the statute is to be strictly construed and the plaintiff to recover the statutory penalty must bring himself within its terms. We think the failure to prove the nonconsent of Mrs. Wright was fatal to a recovery under that authority. She certainly had some rights in the homestead and could prevent the sale of the timber without her consent. It may be that the plaintiff J. A. Wright

could have recovered without joining his wife as a party; it is not necessary here to decide that question, but having made a coplaintiff of her and taken judgment in her favor as well as in favor of J. A. Wright, without having made the necessary proof of nonconsent, compels a reversal of the judgment.

As the case must go back for a new trial, we direct attention to the insufficient proof of a correct survey by the county surveyor. It may be that without this survey there was enough testimony to go to the jury, but when a surveyor is called upon to establish a land line between coterminous owners, the surveyor should begin at an established government corner called for by the field notes and find the evidences or some of them sufficient to show that it was a correct corner, and he should then re-establish the line and should find that at the other end of the line is a recognized government corner, or one re-established by another surveyor, or one that is so well established and recognized by all persons in the community that there can be no doubt of its correctness. The original survey, whether correctly made or not, is the true boundary between sections, and the surveyor must locate the original lines as run by the original surveyor. In case he misses the recognized corner, he should not divide the difference between the owners, because this does not re-establish the true boundary line. It may have the effect of giving each landowner the number of acres to which he is entitled, but it does not necessarily do so and it does not establish the true line. He should readjust his instruments, take his bearing from the true corner, and continue his survey until he correctly traces the boundary between the two landowners.

We also call attention to errors in instructions for the plaintiff. The instructions for the plaintiff leave out important hypotheses and are incorrect as given. For instance, in one of the instructions the jury was told that if the plaintiff gave notice to the defendant Ethridge, as

to the land line and forbade him to cut timber across said land line, and if the plaintiff also gave notice to the Buckwalter Lumber Company, through one of its officers, not to cut over said line, and that after giving of said notice the timber was cut without having run and measured off said land or land line, it was their sworn duty to find in favor of the plaintiff for the statutory penalty and also for the actual value. This instruction ignores whether or not the Buckwalter Lumber Company directed or authorized the cutting after the giving of the notice. It is also faulty in requiring a finding for the plaintiff if the land line was not marked prior to the cutting but after the giving of the notice. It ignores the testimony in the record that there was an old land line marked by government corner and survey marks and tracings, and makes the defendant liable, although it may have actually owned the timber by a true line established in the law suit. In other words, it entitles the plaintiff to recover if the line was not run between the notice and the cutting, regardless of the true line established by the evidence at the trial of the law suit. The same theory runs through several instructions. These instructions should be carefully analyzed and redrafted on another trial so as to fairly present the issue as to where the true boundary is and limit the rights of the parties in accordance with that and with the law upon the subject. For the errors indicated, the judgment must be reversed, and the cause remanded for a new trial.

Reversed and remanded.