DEAN, et al. *v.* WOOLBRIGHT

No. 40078 March 26, 1956 86 So. 2d 305

*Gipson, Gipson & Wiley,* Meridian, for appellants.

*Russell Wright,* Meridian, for appellee.

ETHRIDGE, J.

This suit concerns a dispute over the boundary line between the two 40-acre tracts of land in Lauderdale County. The appeal involves primarily the questions of whether the chancellor was correct in (a) overruling the defendants' plea of equitable estoppel, and (b) in rejecting the survey of Lee B. Brandon, and in holding that the agreement of the parties to settle the suit by having a survey made which would establish the "true land line" between the two tracts was unenforceable.

Appellee-complainant, Mrs. Sudie Mae Woolbright, was the owner of the east forty acres in ques-

tion, in addition to a 40-acre tract immediately north of it. Her father had previously conveyed the land to her, reserving a life estate, and the full title vested in Mrs. Woolbright upon his death in October 1944. The appellants, C. D. Dean and wife, Mrs. Opal Dean, and Charles Dean, owned the 40-acre tract contiguous to and west of appellee's land. The dispute pertains to the boundary line between these two tracts. Appellants, who were defendants in the court below, filed a plea of equitable estoppel of appellee, setting up that she was precluded from asserting title up to an old fence line approximately 27 yards to the west of the line reflected by the Slaughter Survey of October 1944. The chancery court held that appellee was not estopped from asserting that the old fence line was the true boundary line between the two tracts; that the new fence was not built upon the line established by the Slaughter Survey until 1950 or 1951; and that it was not built by appellants as the result of any statements by appellee indicating recognition of the Slaughter line as the true line. These findings were supported by ample evidence, and accordingly the chancellor correctly overruled appellants' plea of equitable estoppel.

Following this disposition of the plea of equitable estoppel, all parties to the suit by their attorneys executed an agreement by which it was agreed that the chancellor would appoint a registered civil engineer who would "run, mark and establish a true land line between the lands of the complainant and the defendants"; and that such "true land line" which would be run by the civil engineer would be established by the courts as the "true, correct and legal land line between the said lands". All of the parties waived their rights to claim title to any of the disputed area by reason of adverse possession and other matters. The chancellor first appointed as surveyor Henry E. Damon, but he reported that he could not run the survey. The chancellor then appointed Lee B. Brandon to make the survey and to mark "the true

land line'' between the two tracts. Brandon made a survey of the line between the two tracts in dispute, dated April 2, 1955. He filed a short written report and testified at some length after appellee had filed objections to his survey. The principal objection was that Brandon in making such survey did not locate any established corner or monument of the original survey made by the United States Government engineers, and that the corners of the survey which were made were not established with respect to any such original corners or mounments. Brandon testified that he did not prove his starting point by the location of a corner fixed by the original government survey; that he used the original field notes in making his survey, but did not establish the corner from which he began as being the same as that of the original survey. He said that he proved the west line of Section 6 southeast of the lands in question ''as far as I could with the information and the field notes, and existing corners on the ground.'' He said that these property corners were those ''that had been recognized''. He made the survey to the best of his ability and in accord with the best information he could get, but the only point which he checked was his beginning point, which he said had ''been previously checked when Topton Airport was purchased by Lauderdale County''. He then proceeded to make the survey by a traverse. Moreover, the method he used in locating the land line was to take a certain line from the west side of Section 6 to the center of Section 32, and since there was a shortage of 30 feet in east and west directions with reference to the original field notes, he divided the distance and took 15 feet off of the lines of each of the two tracts.

The chancellor rejected Brandon's survey on the ground that it did not establish the true land line according to the original government survey. The court held that the true line as agreed to by the parties in the contract of August 30, 1954, means the true line in

relation to the government survey originally run. The Brandon survey did not meet this requirement. The trial court also held that in view of Damon's oral report to the court, and of Brandon's testimony, a "true line cannot be run and established" with reference to this property from the original government monuments and survey. Accordingly it cancelled the agreement of the parties as being unenforceable, and held that the case must be decided on evidence taken as to adverse possession. Appellants were allowed an interlocutory appeal from that decree.

 In view of Brandon's testimony concerning the unavailability of the original monuments of the U. S. survey, and the terms of the contract between appellants and appellee to appoint a surveyor to establish the "true land line" between their lands, we do not think that the chancery court was in error in setting aside the agreement of the parties concerning a survey of the true land line. A similar situation arose in Hunt v. Rutledge, 48 So. 2d 139 (Miss. 1950), where an agreement to establish the "true land lines" according to the government field notes was made by the parties, and this Court held that the survey made for the chancery court did not meet that contractual requirement, since it was not based upon a true point of beginning as used in the original government survey. Unless it were possible to make such a survey, "the litigants should be relegated to their right of making proof of adverse possession in support of their respective claims to the strip of land in dsipute, . . ." Hunt v. Rutledge supports the rejection of the Brandon survey and the setting aside of the contract of the parties concerning the establishment of the "true land line".

The Brandon survey was not made in accordance with the requirements set forth in Buckwalter Lbr. Co. v. Wright, 159 Miss. 470, 132 So. 443 (1931). It was there expressly held that the surveyor should begin at an

established government corner called for by the field notes and find the evidences, or some of them, sufficient to show that it was a correct corner; that the original survey, whether correctly made or not, is "the true boundary between sections, and the surveyor must locate the original lines as run by the original surveyor. In case he misses the recognized corner, he should not divide the difference between the owners, because this does not re-establish the true boundary line". This was followed in Thornton v. Headrick, 50 So. 2d 907 (Miss. 1951), 51 So. 2d 572, and Lankford v. Magee, 76 So. 2d 845 (Miss. 1955). See also City of Hattiesburg v. Hillman, 76 So. 2d 368, 371 (Miss. 1954). Although the rule of the Buckwalter Lbr. Co. case is stringent and demanding in view of the loss of many original corners of the original government surveys, whether a particular corner is the original corner often becomes a question of fact for the trial court. Thornton v. Headrick, supra. Here we are dealing only with the interpretation of an agreement to settle a suit and with the question of whether Brandon's testimony concerning his survey and the unavailability of the original government corners in this particular area, warranted the trial court in cancelling as unenforceable the agreement of the parties to find the "true land line", and in relegating the litigants to establishing their rights by proof of adverse possession as to this strip. As previously stated, the chancery court was justified in so holding. For these reasons, the case is affirmed and remanded for further proceedings consistent with this opinion.

Affirmed and remanded.

*McGehee, C.J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.