## WARREN v. CITY OF TUPELO.

(Division B. March 4, 1940.)

[194 So. 293. No. 34029.]

Geo. T. and Chas. S. Mitchell and Claude F. Clayton, all of Tupelo, for appellant.

Blair & Anderson, of Tupelo, for appellee.

820

**McGowen, J.,** delivered the opinion of the court.

Warren, appellant, sued the City of Tupelo, appellee, for damages for personal injuries sustained by him by reason of a limb of a tree having fallen upon his head and neck. He alleged that the city was negligent as to the limb of the tree and the maintenance of its streets at that point.

To the declaration, the city plead the general issue, and gave notice that unusual and rather peculiar conditions existed at Tupelo at the time of the accident to Warren. At the conclusion of all of the evidence, both for plaintiff and defendant, in the court below, the court granted the appellee, the City of Tupelo, a peremptory instruction, and judgment was entered accordingly. Warren appeals therefrom, and assigns as error the granting of the peremptory instruction.

On the 23rd day of May, 1936, about 9 A. M., appellant Warren was standing on the sidewalk on South Broadway Street in front of his place of business, an automobile repair and welding shop, talking to a business

neighbor. While so engaged, a limb fell from a water oak tree and struck him on the head and neck which painfully and seriously injured him. All of the testimony tends to show that on April 5, 1936, a most disastrous storm occurred in the City of Tupelo; and that this limb which struck the appellant had, at that time, become wrenched or twisted due to the fury of the storm, and therefore fell suddenly and without warning. The limb was good seasoned timber, was not rotten, had not been dead long, and was about fifteen or twenty feet long and about three inches in diameter in the largest part. The tree from which the limb fell was a water oak about forty feet high, two and one-half feet in diameter, and at that season of the year its foliage was thick and heavy. There was another water oak about twenty feet south of this one. These trees were growing on the land between the sidewalk and the curb of the street in front of appellant's place of business. The appellant had passed the tree daily for nearly four years and in all that time he had observed nothing strange or dangerous or out of the ordinary about it. Also, neither he nor his business associates or his friends had observed any loose limbs in the tree.

One witness for the appellant testified that, during the year before the storm, he had observed small limbs that had fallen from these trees. A lady testified that she was driving her car shortly after the storm and she had noticed a limb that had fallen near her car in that vicinity. One witness testified that two or three days after the storm he had seen wrenched limbs in this tree as he stood at his place of business across the street from that of the appellant. However, he did not report what he saw. After that he did not observe the wrenched limbs again, and did not know whether the limbs that he saw remained in the tree or not. Two ladies, who resided at a hotel across the street from the tree in question, testified that they had looked into the trees and admired their beauty almost every afternoon, had parked

their cars underneath it, and saw no signs of broken or wrenched limbs or any signs of danger therefrom.

On behalf of the city, it was shown that on this street, South Broadway, after the storm, a kitchen for feeding the public had been maintained and many of the people of Tupelo, officials of the city, and men connected with agencies undertaking to render aid to the stricken city, had passed along that street and beneath these streets almost daily and saw nothing amiss. These were people whose duty called them there frequently. One alderman testified that he looked up into the trees. The street commissioner and other officials of the city testified that when they had any notice after the storm of any danger from trees or anything else on the streets that they responded at once and that they had not had any notice that there was anything wrong about these trees. The mayor and other witnesses for the city testified as to the velocity of the storm, and the terror created by it. Twenty-five hundred trees were blown down. Many houses, including the high school, were either damaged beyond repair or absolutely demolished. Many people were killed, and many were injured from the debris of houses, fences, trees and the like. Hundreds of extra workers were employed to clear away debris. Agencies of the government and of the state went to the rescue. Nearby towns furnished men and material in aid of the stricken city. For at least thirty days, the wreckage engaged the attention, not only of all of the employees of the city, but of all these outside agencies.

The lower court granted the peremptory instruction on the theory that there was no notice to the city, either actual or constructive, that this limb was out of order in this particular water oak tree, or that there was any danger from any part of the tree to the pedestrian or other traveler on the street.

It is conceded that there was no actual notice, but on appeal here, the only question argued is whether or not the facts of the case, sufficiently detailed by us to be

understood, warranted the court in giving a peremptory instruction; but, on the contrary, it is insisted that whether or not constructive notice might be implied from these facts as against the city was a question for the jury.

It was freely conceded that the governing authority of the municipalty had never maintained any inspectors for the specific purpose of examining the trees either before or after the storm.

In this state, it is quite well settled that the facts and circumstances of each case must determine whether constructive notice of defects (in the street) is to be attributed to the municipality, and ordinarily this is a question for the jury. City of Greenville v. Middleton, 124 Miss. 310, 86 So. 804.

It is further settled in this state that the duty of a municipality to keep its streets and sidewalk reasonably safe for the traveling public is not an absolute one. Reasonable care to keep it reasonably safe for those using them with due care is the criterion. Hazelhurst v. Mathis, 180 Miss. 42, 176 So. 384. A municipality in this state is not an insurer of the safety of the traveler on the streets.

The duty of a municipality to exercise reasonable care to ward against defects from overhead as well as underfoot exists. The danger may be as great from overhead as from underfoot, and it would be charged with that degree of care commensurate with the danger and risk as to trees which are permitted in the neutral ground between the sidewalk and the street, and in a proper case it would be liable for damages ensuing to a pedestrian struck by a limb which had been negligently allowed to remain in a tree for such length of time as to evince want of ordinary care relative thereto. See 43 C. J. 1030, Sec. 1809, and especially Note 11.

In the case at bar, the injured party, as lessee of the land on which the tree stood and from which the limb fell, had a proprietary interest in the tree. The owner

of the property also had a proprietary interest. The appellant maintained a shop, and these trees were a boon to him in the summertime as he labored. He was not aware of the danger lurking in the limbs and foliage of the tree. Many witnesses, who traversed that street daily, testified that they had observed nothing that would have indicated any defect or danger. One man, a friend and business neighbor of the appellant, testified that he had seen a limb or limbs which had been torn from the tree, but evidently regarded it as trivial since he did not report it to the municipality.

It is argued that after such a storm as had visited Tupelo, briefly described herein, that it devolved upon, the governing authorities to be on the alert to the dangers that had been created; that nature had acted violently upon the trees, and therefore the duty to make some inspection arose. We are of the opinion that a complete answer to this proposition is that a storm which had destroyed thousands of trees, and left no visible sign to the passerby of the danger in the tree in question, might well have exerted its force to remove from the tree every dead or weak limb. In other words, that this sturdy oak had withstood the ravages of the cyclone or tornado.

Further, we are of opinion that it is not the duty of a municipality to have a regular or continued inspection of the trees which are allowed to remain to beautify the street, and for the comfort of pedestrians and the enjoyment of the owner of the fee on which the tree stands, but that the same general rules might be applied to this case as was re-announced in the Mathis case, supra; that the city exercise reasonable care for the people using the streets who themselves are exercising reasonable care; and that the city would not be required to make an inspection of that which presented no visible signs of defects or danger; such as the tree in this case. The city created nothing artificial overhead in this tree. This situation was created by the forces of nature, over which

the municipality had no control, and this fact must be borne in mind.

In the case of Dow v. Town of D'Lo et al., 169 Miss. 240, 152 So. 474, 476, the court there had a case where a telephone pole had been withdrawn from a hole left unfilled, and a short time thereafter someone covered it with a plank, in due course of time Bermuda Grass grew over it, the plank rotted, and someone fell in. In some seven or eight years, people in the vicinity did not discover that the plank had decayed although they passed it day after day. No faulty work had been performed by the municipality. The court there said: ''The fact that mere passers-by did not observe or discover a dangerous defect is not sufficient to relieve a municipality of constructive notice; but, if the defect or danger be such as not to be observable by those who constantly pass day by day or who for years have lived and labored at the location in question, constructive notice cannot be charged upon the municipality unless the danger was the result of faulty work by the municipality itself. 43 C. J., pp. 1051, 1052.'' See also, Jones v. City of Greensboro, 124 N. C. 310, 32 S. E. 675, 676. The court there said, with reference to a falling limb which inflicted injury upon a pedestrian: ''If we assume that the limb was a defect, there is no evidence in the case that it was decayed materially or how long it had existed. No witness saw it before the accident, and there was no evidence that any one had seen it, or that any city officer knew of it, or could by reasonable diligence have seen it, before the accident. Stanton v. Salem, 145 Mass. 476, 14 N. E. 519.''

The view we have here announced is strengthened by the fact that the owner of the land who visited the place often, and who had the most interest in the tree and in the land, observed no sign of danger from a falling limb. The appellant himself had a lively interest in the tree. He was at his place of business daily, and he saw no sign of danger in the tree. The danger was so well concealed

that it would almost require that we announce that the municipality in this case was an insurer of the appellant's safety. It is not a case of patent danger; or defect such as is to be found in the case of a dead limb which fell from a tree and injured a pedestrian, the facts of which are to be found in the case of Lundy v. City of Sedalia, 162 Mo. App. 218, 144 S. W. 889. In that case, a dead limb on a tree, seven feet above the sidewalk, fell and injured a pedestrian; notice was imputed to the municipality, and liability imposed. The defect in the limb on this tree was easily discernable. The limb was rotten to such an extent that it broke in pieces showing that the defect was obvious. It was not so in the case at bar. We do not think under the facts of this case constructive notice was imputed to the governing authorities of the City of Tupelo, applying the same rule, but, a different set of facts as was announced in the D'Lo and City of Greensboro cases, supra.

Affirmed.