CITY OF HATTIESBURG *v.* HILLMAN, ADMRX.

No. 39386 December 13, 1954 76 So. 2d 368

*M. M. Roberts, C. W. Sullivan,* Hattiesburg, for appellant.

*Wingo & Finch,* Hattiesburg, for appellee.

LEE, J.

This is an appeal by the City of Hattiesburg from a judgment of the Circuit Court of Forrest County, which awarded damages in the sum of $10,000.00 to Mrs. Clydie Mae Hillman, Administratrix, on account of the alleged negligence of the City, resulting in the death of Brenda Hillman.

On March 3, 1953, the Hillman family lived at 104 Eastside Avenue in the City of Hattiesburg. Their next door neighbors, the C. D. McDonald family, lived at 106 Eastside, where it is intersected by Katie Avenue. Katie Avenue is 50 feet wide. Approximately 20 feet in the center was graveled. This left a neutral ground of about 15 feet on each side, between the graveled portion and the street line. On the north neutral ground, and alongside the McDonald lot, stood three large oak trees ranging in diameter from 18 to 24 inches.

Little Brenda Hillman, two and a half years of age, about 3 o'clock that afternoon, had been playing with one or two other children on the north side of the house. Jerry McDonald walked around to the south side of the yard and Brenda followed. She was standing between the house and the second tree. Suddenly a large limb, 8 or 9 inches in diameter, 18 or 20 feet long, weighing about 200 pounds, broke off of the oak tree and fell 12 or 14 feet upon the child with such force that her skull was fractured. She was thereafter unconscious until death ensued about 2 hours later.

The wind was blowing as it does on an ordinary March day, but no other limbs fell in the area on that occasion.

The evidence was undisputed that the tree leafed out in the spring of 1951, but shortly thereafter died. The limbs had become rotten. When it was removed, follow-

ing this tragic occurrence, the roots had decayed and rotted to such an extent that there was no difficulty in taking it down. The plaintiff offered several witnesses who testified that they had given the City authorities notice of the dangerous condition of the tree from 3 to 7 or 8 months prior to the injury and death of the child. In each instance, there was a denial by witnesses for the City.

The City, in its request for a peremptory instruction in the court below contended in effect, as it contends here, that although Katie Avenue was dedicated as a 50 foot street, the city opened and invited the public to use only 20 feet; that there were no sidewalks and therefore no occasion for anyone to use the neutral ground; that the title to the tree was vested in McDonald, the abutting property owner, and the City was under no duty to remove it without his permission; and that it knew nothing about the dangerous condition of the tree. Besides the wind blew the limb down, and that was an act of God.

■■■ It is well settled that a municipality is under the duty to exercise reasonable care to keep its streets reasonably safe for those using them with reasonable care. City of West Point v. Barry, 67 So. 2d 729; City of Hazlehurst v. Matthews, 180 Miss. 42, 176 So. 384. This duty extends to guarding against defects from overhead as well as underfoot. Warren v. City of Tupelo, 187 Miss. 816, 194 So. 293.

■■■ It is also true that while the title to trees standing in the neutral ground is vested in the adjacent property owner, beyond doubt a municipality, in the exercise of reasonable care for the safety of persons and property in and near its dedicated streets, has the right and is under the duty to remove them, if they are dangerous. Brahan v. Meridian Home Telephone Co., 97 Miss. 326, 52 So. 485; Campbell v. Covington County, 161 Miss. 374, 137 So. 111; Town of Durant v. Castleberry, 106 Miss. 699, 64 So. 657; City of West Point v. Barry, supra.

. There were two reasons why liability for damage from the falling tree was denied in City of West Point v. Barry, supra: (1) The slight leaning of an apparently sound tree was not sufficient evidence of danger to require its removal by the City; and (2) the tree fell as the result of an unprecedented sleet and ice storm. If the evidence of danger had been sufficient to require the City, in the exercise of reasonable care, to remove the tree, and if it had fallen during normal weather conditions, then undoubtedly the City would have been liable. The opinion, in effect, so stated for it said: "There is no good reason why a municipality should not be held liable to an abutting property owner for damage caused by its negligence in permitting a dangerous tree to stand on the right of way of its street."

Likewise it can now be said that there is no good reason why a municipality should not be liable for damages to persons on the neutral ground as well as on the adjacent property, where injuries proximately result from the municipality's negligence in permitting a dangerous tree to stand on the right of way of its street.

Now in 65 C. J. S., Negligence, Section 21(b), pages 432-3, it is said: "No one is liable for an injury proximately caused by *an act of God,* which *is an injury due directly and exclusively to natural causes without human intervention, which could not have been prevented by the exercise of reasonable care and foresight.* * * * The application of this rule may preclude any recovery for injuries caused by extreme weather conditions, * * * or extraordinary or unprecedented * * * winds, * * *. An act which may be prevented by the exercise of ordinary care is not an act of God; * * * " (Emphasis supplied.) See also 38 Am. Jur., Negligence, Section 7, page 649, and Section 75, page 734.

The tree had been dead for nearly two years. Whether the City had actual knowledge of its dangerous condition was controverted and the jury resolved that is-

sue against the City's version. But it is obvious that the slightest observation or inspection would have disclosed such condition. Even without actual notice the danger should have been ascertained in a reasonable time. Lack of knowledge for such a long period can not be excused. If the child, when she lost her life, had been walking along the graveled portion of the street, it would be idle to say that the City would not be liable. The evidence is not clear as to whether she was on the McDonald property or on the neutral ground when the limb fell. But that fact is immaterial because it was reasonably foreseeable that injury was likely to happen to someone. Her death was the proximate result of the failure of the City to remove a dead and dangerous tree from its street when it knew, or by the exercise of reasonable care ought to have known, of the potential danger. See Morris v. Salt Lake City, 35 Utah 474, 101 P. 373, 378; Jones v. Town of Great Barrington, 273 Mass. 483, 174 N. E. 118. ██ This unfortunate death cannot justly be attributed to an act of God.

The requested peremptory instruction was properly refused, and the demurrer, which raised the same questions, was likewise properly overruled.

██ The City complains that the trial court erred in admitting a topographical survey, made by the City engineer, on the ground that he did not start from an established corner. It cites J. R. Buckwalter Lbr. Co. v. Wright, 159 Miss. 470, 132 So. 443.

The trouble about this alleged error is that the City itself, in its cross-examination of the same witness, introduced three photographs which showed Katie Avenue in its entirety, with the graveled portion, the trees, and the place where the child was struck, much more clearly than was depicted in the survey to which objection was made. Consequently the error was harmless.

In the original suit David Andrew Hillman, M. D. Hillman and Mrs. Clydie Mae Hillman were individual plaintiffs. However a nonsuit was taken and a new ac-

tion was brought in the name of the administratrix. The City's answer denied the appointment and right of the administratrix to bring the suit. A copy of the decree of the chancellor, which authorized the institution of the action by the administratrix, was attached to a motion to strike that part of the City's answer, and the same was stricken. Appellant complains of error on that account.

This contention is not maintainable because the administratrix was empowered and had the right to bring the suit. Section 1453, Code 1942; J. J. Newman Lbr. Co. v. Scipp, 128 Miss. 322, 91 So. 11; Miss. Power & Light Co. v. Smith, 169 Miss. 447, 153 So. 376; Southern Pine Electric Power Assn. v. Denson, 214 Miss. 397, 57 So. 2d 859.

By paragraph 13 of the declaration, it was alleged that Mrs. Hillman, her husband, and David Andrew Hillman, a brother of the deceased, were deprived of the love, companionship, etc., of the deceased. The jury was instructed, at the instance of the plaintiff, that they could consider the loss of love, companionship, etc., if any, of the deceased child, which her survivors would have enjoyed, except for her death. The City contends that this was error because the court refused its proposal to show that Mrs. Clydie Mae Hillman, formerly Mrs. Lambert, married M. D. Hillman on June 19, 1950, the same day that she obtained a divorce from Lambert, and that Brenda was born thereafter on August 20th, and that it was entitled therefore to invoke a presumption that Lambert was the child's father.

Hillman, on the stand, admitted the date of the marriage and the date of Brenda's birth, just as the appellant proposed. He and Mrs. Hillman were husband and wife when the child was born. Of course the conception must have occurred about seven months prior to this marriage. But Hillman testified that he was the father of the child. While the court should have permitted the City to inquire as to the date of Mrs. Hill-

man's divorce, or to offer proof thereof, still the fact that Brenda was born only two months after her father and mother were married was before the jury, and the error was harmless.

The City also contends that the verdict is excessive.

In Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665 (1949), the Court said: "* * * we feel impelled to say that a verdict for only $2,000 should not be permitted to stand as being adequate damages for the death of a little five-year-old girl," and reversed and remanded the cause for another trial on the sole issue of damages. The reduced value of money was pointed out. In Phoenix Laundry v. Shemper, 44 So. 2d 859 (Miss. 1950) this Court affirmed a verdict of $10,000 for the death of Gene Shemper, a boy of the age of six years, who died within 30 minutes after receiving an injury, but was unconscious during the interval.

 The verdict here is not so large as to evince passion, prejudice or corruption. McDonald v. Moore, 159 Miss. 326, 131 So. 824; Miss. Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164; Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107; J. C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779; Aponaug Mfg. Co. v. Carroll, 183 Miss. 793, 184 So. 63; Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628; Miss. Power & Light Co. v. Thomas, 206 Miss. 201, 39 So. 2d 759; St. Louis-San Francisco Ry. Co. v. Dyson, 207 Miss. 639, 43 So. 2d 95; Sears, Roebuck & Co., et al v. Burke, 208 Miss. 306, 44 So. 2d 448.

No prejudicial error appears in the record, and the cause must, therefore, be affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.