**Carl NIEPERT, an Individual and as Executor of the Estate of Dorothy Niepert, Deceased, Appellant,**

v.

**The CLEVELAND ELECTRIC ILLUMINATING COMPANY, Appellee.**

No. 12883.

United States Court of Appeals
Sixth Circuit.

March 1, 1957.

Fred D. Shapiro, Cleveland, Ohio, Theodore T. Sindell (of Sindell, Sindell & Bourne), Cleveland, Ohio, for appellant.

George I. Meisel (of Squire, Sanders & Dempsey), Cleveland, Ohio, for appellee.

Before SIMONS, Chief Judge, and ALLEN and STEPHENS,* Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a libel instituted against defendant for wrongful

* Albert Lee Stephens of the Ninth Circuit.

death of libelant's wife and for damage to libelant's motor boat alleged to have been caused by the negligence of respondent in creating a hazard to navigation by extending a pier over 1,200 feet into Lake Erie without adequate lighting.[1] The findings of fact of the District Court, which the parties stipulate are true and accurate, are printed in the margin.[2] The District Court held that

1. The parties will be designated as in the court below.

2. 1. On October 3, 1953, at about 10:00 o'clock P. M. a 28-foot Gar Wood type motor boat, owned and operated by libellant, collided with a nearly completed pier which was being built for respondent in the navigable waters of Lake Erie near Eastlake, Ohio, which collision resulted in the death of libellant's wife, Dorothy Niepert, and the sinking and complete loss and destruction of libellant's said boat.

2. The pier extended from the shore into the waters of Lake Erie a distance of 1200 to 1300 feet, and projected from six to seven feet above the surface of said waters, thereby constituting an obstruction and hazard to navigation, especially to small craft such as libellant's boat.

3. At the time of the collision the pier was nearly completed. The construction was being done for respondent by the Great Lakes Dredge & Dock Company. Permanent lighting for the pier was included in the construction plans and had been approved by the United States Coast Guard, but at the time the collision occurred its installation had not been completed.

4. At the time of the collision the lighting on the pier consisted of a temporary light of a type supplied and approved by the contractor, located on a pole at the end of the pier. While the United States Coast Guard did not recommend any certain type of light for temporary lighting, it did require that such a light be visible from all essential horizons. The light provided was not visible from all essential horizons.

5. Under all of the circumstances the temporary lighting provided on the pier was not adequate. The failure of the respondent adequately to light the pier, while neither wilful, reckless, nor wanton, did constitute a breach of duty, or fault, upon the part of respondent which proximately brought about the accident and the consequent death of the libellant's wife.

6. On the night of the collision the Lake was calm, but the night was very dark. There was no mist, fog or other similar obstruction to visibility.

7. Prior to the time of the collision libellant knew of the existence and approximate location of the pier. He had made four trips past the pier before the day of the collision, at least once at night and three times in the day. He had passed by the pier twice in the afternoon of the day of the accident. Libellant also knew that respondent maintained a power plant on the shore from which the pier jutted out into the water.

8. Libellant was an experienced amateur lake boatsman with 25 years' experience in operating small boats on Lake Erie. As he approached the vicinity of the pier libellant and Wick, a passenger in the boat, saw the lights of respondent's power plant on the shore, knew they were in the vicinity of the pier, and discussed its probable location. They also discussed the lights from a barge which Wick had on all previous occasions seen east of the pier. Despite libellant's knowledge that he was in the vicinity of the pier, he proceeded ahead, reducing the speed of his boat only from 15 to 16 miles per hour to 12 to 14 miles per hour. He looked for the light on the pier, but despite the fact that he did not see it and that, as he testified, he knew he was in a situation requiring the utmost care, he proceeded at the same rate of speed until he first discovered the pier 20 feet ahead of him, when he swerved his boat, too late to avoid a collision.

9. Libellant failed to exercise ordinary care under all of the circumstances prevailing, and such negligence proximately contributed to the loss of his boat and the death of his wife.

10. The negligence of both the libellant and the respondent jointly contributed directly to the loss of libellant's boat and the death of libellant's wife.

11. The fair and reasonable value of libellant's boat at the time of its loss, under the only evidence introduced, was $5,000.00.

12. This action to recover damages for the death of libellant's wife is brought by libellant as the personal representative of the decedent to recover the pecuniary loss suffered by libellant, and James E. Boast, her adult son, who together are the only surviving next of kin of the decedent. No evidence was offered tending to prove that James E. Boast suffered any pecuniary loss on account of the death of libellant's wife and it is, therefore, found that no such loss was suffered. No finding is made as to the

the rule of division of damages which controls in admiralty cases, 46 U.S.C. Section 766, 46 U.S.C.A. § 766, was applicable to the loss of respondent's motor boat. The court found the value of the boat to be $5,000 and gave judgment for libelant for $2,500. However, the right to recover for the death of libelant's wife was denied upon the ground that respondent was guilty of contributory negligence in that with full knowledge of the existence of the pier and its position in Lake Erie he failed to check his speed in approaching the pier. The court denied recovery upon this phase of the case for the reason that the Ohio rule of contributory negligence was applicable and therefore the action was barred. Purdy v. Kerentoff, 152 Ohio St. 391, 396, 89 N.E.2d 565.

The sole question presented is whether the District Court erred in applying Ohio substantive law in an admiralty proceeding. The court concluded that the right of recovery for wrongful death was a state-created right and not a right rooted in maritime law and that therefore the state substantive law controlled. The libelant, while conceding that the remedy supplied by a state wrongful death statute may be borrowed by a federal court in an admiralty proceeding, contends that only the remedy may be borrowed and not the substantive common law of the state. He urges that the Ohio common-law rule that a finding of contributory negligence bars libelant's claim herein cannot prevail over the admiralty rule of comparative damages. In support of this contention he cites holdings of the Supreme Court of the United States in cases not involving wrongful death, in which the admiralty rule of division of damages is approved and stressed. Cf. The Max Morris, 137 U.S. 1, 14, 15, 11 S.Ct. 29, 34 L.Ed. 586; Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 205, 98 L.Ed. 143. The following language in the Pope & Talbot case, libelant contends, requires reversal:

"While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court."

This argument is premised upon the assumption that libelant is deprived here of substantial admiralty rights as defined by Congress or by the Supreme Court of the United States. We think the instant case does not involve such a deprivation.

The Supreme Court has repeatedly held that the maritime law does not allow recovery for wrongful death. The Harrisburg, 119 U.S. 199, 213, 7 S.Ct. 140, 30 L.Ed. 358; Western Fuel Co. v. Garcia, 257 U.S. 233, 240, 42 S.Ct. 89, 66 L.Ed. 210; Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319, announced in 1953. In order to provide a remedy for wrongful death on the high seas, in 1920 Congress enacted such legislation covering the high seas, 46 U.S. C. Section 761, 46 U.S.C.A. § 761. This statute expressly excluded an action for wrongful death within a league from the shore of any state. The instant case arose within a league from the shore line of Lake Erie. While 46 U.S.C., Chapter 21, 46 U.S.C.A. § 761 et seq., provides, in accordance with the general maritime law, that contributory negligence shall not bar recovery but shall only mitigate damages (46 U.S.C. Section 766, 46 U.S.C.A. § 766), Section 767 of the same statute excludes the Great Lakes from the area covered by the chapter. It reads as follows:

"The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone."

pecuniary loss, if any, suffered by libelant on account of the death of his wife

because it is found that libellant cannot recover therefor on other grounds.

Section 767 expressly retains the action and remedies for death as they exist in state statutes, but excludes, under the circumstances of this case, the provisions as to comparative negligence. Senate Report No. 216 of Senate Reports, Vol. 1, Miscellaneous, stated the purpose of this enactment as follows:

"The present bill is designed to remedy this situation by giving a right of action for death, to be enforced in the courts of admiralty, both in rem and in personam. The right is made exclusive for deaths on the high seas, leaving unimpaired the rights under State statutes as to deaths on waters within the territorial jurisdiction of the States."

That part of Lake Erie upon which the accident occurred is within the territorial jurisdiction of the State of Ohio. 5 U. S. Statutes at Large 49; Edson v. Crangle, 62 Ohio St. 49, 56 N.E. 647.

■ The debates on the subject in Congress, including Reports of the Senate and House Committees on the Judiciary (66th Congress, Second Session, 1919–1920, Senate Reports Volume 1, Miscellaneous, Report No. 674), together with statements made by the Chairman and members of the Judiciary Committee of the House, at the time of the passage of 46 U.S.C., Chapter 21, 46 U.S.C.A. § 761 et seq., Congressional Record, Volume 59, Part 5, 66th Congress, Second Session, conclusively show that as to wrongful death on the Great Lakes the situation was to remain unchanged. The cause of action for death or the right to recover for death was to be pleaded under the state statutes.

It is true, as pointed out by this court in Pioneer Steamship Co. v. Hill, 227 F.2d 262, 263, that the class of workers who may avail themselves of the admiralty doctrine of seaworthiness in cases of maritime tort not resulting in death has been broadened. Pope & Talbot, Inc., v. Hawn, supra, 346 U.S. 412, 74 S.Ct. 206. In that case a carpenter employed by an independent contractor and in no sense a seaman, who was working on a ship berthed in navigable waters, was held not to be barred by contributory negligence and to be entitled to recover under the comparative damages rule of admiralty. But this doctrine does not extend to a wrongful death action occurring on one of the Great Lakes so as to eliminate substantive state law retained by the Congress as applicable in such cases.

If we read Pope & Talbot, Inc., v. Hawn, supra, correctly, it does not require the lower courts, against the deliberate enactment of the Congress, to apply the admiralty rule of contributory negligence in an accident occurring on waters from which Congress expressly excluded both the right and the remedy for wrongful death provided for the high seas in 46 U.S.C., Chapter 21, 46 U.S.C.A. § 761 et seq. The case of Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, relied on by libelant does not affect this view. It did not overrule the prior decisions such as Western Fuel Co. v. Garcia, supra, with reference to the wrongful death action nor supersede the statutes of Congress pertaining thereto. The principal question presented in Cox v. Roth, supra, was whether an action under the Jones Act, 46 U.S.C. Section 688, 46 U.S.C.A. § 688, survives the death of a tort-feasor. The Cox case was not predicated upon any state statute and, since the Supreme Court had before it no question of a state-created right, we think it has no bearing here.

■ Since the right of recovery for wrongful death occurring on the Great Lakes was created by state law and not by Congressional legislation or by court decision, the District Court correctly held that substantive defenses existing under state law, such as contributory negligence, applied. This is the law long established in this court. Robinson v. Detroit & C. Steam Navigation Co., 6 Cir., 73 F. 883; Feige v. Hurley, 6 Cir., 89 F.2d 575; Hutchinson v. Dickie, 6 Cir., 162 F.2d 103, 108; Lee v. Pure Oil Co., 6 Cir., 218 F.2d 711, 714. The decisions in Pioneer Steamship Co. v. Hill, supra, and Imperial Oil, Limited, v. Frank Drlik, 6 Cir., 234 F.2d 4, did not

involve wrongful death actions based upon state statutes. In each case a maritime tort was presented and the state law did not control.

In accordance with our conclusion herein is Levinson v. Deupree, supra, in which the Supreme Court, affirming a decision of this court in 199 F.2d 760, held that the admiralty court in enforcing a state statute giving a cause of action for wrongful death must look to the local law for its substantive rules. The common-law defense of contributory negligence, having become part of the Ohio substantive law with reference to wrongful death, was rightly applied by the District Court.

The judgment of the District Court is affirmed.