MIZELL, PLAINTIFF-APPELLANT *v.*
CAUTHEN, DEFENDANT-APPELLEE

No. 43245          December 14, 1964          169 So. 2d 814

*William F. Riley, Calvin B. Wells,* Natchez, for appellant.

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellee.

PATTERSON, J.

The plaintiff below has appealed to this Court from an adverse judgment of the Circuit Court of Adams County. The jury therein returned a verdict of "not guilty" to the plaintiff's suit for damages as the result of injuries received by him when a large tree fell upon the truck in which he was sitting on South Canal Street in the city of Natchez on January 9, 1962.

South Canal Street is a busy public thoroughfare. The abutting land on the west side thereof is several feet higher than that situated on the east side. The home of the defendant is on the west side of this street. A live pin oak tree some three feet in diameter, with a lean of approximately three degrees toward the street and with its heaviest foliage on the street side, stood in the yard of the defendant until it fell on the afternoon of

January 9, 1962. The tree was in full foliage, for the season, with green leaves, and seemed to be in all respects a healthy tree with certain exceptions hereinafter noted.

On the afternoon of January 9, 1962, the plaintiff, in company with his son and daughter, parked his pickup truck on the east side of the street directly across from the lot upon which the tree stood. The plaintiff and his son remained in the truck while his daughter went into the home of a friend, when the tree suddenly fell across the street and upon the truck to the resultant terrible injury of the plaintiff.

A certified copy of the weather report from the National Weather Bureau was introduced into evidence. This indicates the weather conditions on January 9, 1962, were noted thirteen times. The temperature dropped twenty-one degrees from a high of forty-one to a low of twenty. The report indicates that it was raining during all of the readings, that it snowed one time, sleeted three times, and that it rained during the remainder of the day. The maximum velocity of the wind, which was from the north, was twenty miles per hour and the minimum was eight miles per hour. The ground was covered with snow to a depth of some one or two inches. The weather conditions were so severe the schools of the city were closed at noon and the children dismissed to their homes.

An examination of the tree after it had fallen revealed that it broke in two a foot or foot and a half beneath the surface of the ground due to a decayed root system. The trunk of the tree was sound, though the examination revealed several dead limbs in the upper portion. This was not unusual for a tree of this species at fifty-four years of age. As a matter of fact, about a year prior to the fall of the tree a limb some three inches in diameter had broken in the tree and was removed by an employee of the local power company, who

also testified that with the exception of some peeled bark upon a root of the tree it was otherwise in a sound condition. The defendant, though he had knowledge this limb had broken, did not inquire as to the cause of its breaking.

The evidence is uncontradicted with the exception of the testimony of Mr. and Mrs. Buckles, their son, and a forester. Mr. and Mrs. Buckles testified that the tree was in a dangerous condition and that they so told the defendant at a time when they were engaged in a conversation with him and his wife in regard to exchanging homes. Their son, who on occasion mowed the yard of the defendant, testified further that the defendant made a statement that the tree would probably fall and it needed to come down. The forester testified that the presence of two fruiting bodies, which is a fungus growth, upon the lower portion of the tree just above the ground, was indicative of a diseased condition or decay in the root system of the tree, and this, in his opinion, was sufficient to alert a layman that some action should be taken to determine the safe condition of the tree. The testimony of Mr. and Mrs. Buckles and their son was denied by the defendant and his wife, though the defendant admitted he was aware of the fruiting bodies on the base of the tree, but that their presence meant nothing to him as to the condition of the tree or its roots. Other witnesses testified, as did the defendant and his wife, that the tree, which was of natural growth, appeared alive and healthy; that its foliage was green, and that there was a minimum of dead limbs therein. The opinion of the expert forester was contradicted by several other expert foresters who were of the opinion the presence of the fruiting bodies on the base of the tree would have no particular significance to a person other than an expert as to the condition of the tree.

The primary issue to be determined is whether the defendant breached any duty owed by him

to the plaintiff. The plaintiff contends the defendant as a layman was under a duty to inquire about the safety of the tree if he did not know its actual condition, and that it was his further duty to constantly inspect it to insure its continued safety. In other words, he contends the owner of a tree which abuts a public way owes an absolute duty to the public as to its safe condition, a duty superior to that of reasonable care. To this end he assigns as error the action of the lower court in refusing the plaintiff a peremptory instruction as to liability.

We are of the opinion and so hold that the defendant landowner was under the duty of using reasonable care to prevent his property, which abutted the public way, from becoming a source of danger to the persons using the same. This is in accord with the general rule stated in 65 C.J.S. *Negligence* § 79 (1950), ''Trees. An owner of land who permits a tree to remain thereon near the public highway is under a legal obligation to take reasonable care that it shall not fall into the highway and injure persons lawfully there.'' And, 25 Am. Jur. *Highways* § 490 (1940), page 778, wherein it is stated, ''With respect to the liability of an abutting owner, the rule in most jurisdictions is that he must exercise reasonable care to prevent injury to travelers from trees, which are under his ownership and control, standing in or along a street or other highway.'' And 11 A.L.R. 2d at page 629, which refers to the case of Brandywine Hundred Realty Co. v. Cotillo, 55 F. 2d 231 (3d Dir. 1931) in these words: ''Where a chestnut tree which had been dead for about four years but which bore no exterior evidence of decay, located about ten feet from the highway on defendant's abutting tract of suburban forest land, was blown down by a wind of no unusual violence, striking plaintiff's automobile, damaging it, injuring the plaintiff and killing his companion, it was held that the question of the alleged negligence of the

defendant was properly submitted to the jury. Pointing out that responsibility for the control of one's property is one of the burdens of ownership, the court said that the defendant landowner was under the duty of using reasonable care to prevent his property, which abutted the public highway, from becoming a source of danger to persons using the highway." To the same result see Noble v. Harrison, (1926) 2 KB (Eng) 332; 11 A.L.R. 2d 617; and McCleary, The Possessor's Responsibility As To Trees, 29 Mo. L. Rev. 159 (1964). Compare Barron v. City of Natchez, 229 Miss. 276, 90 So. 2d 673 (1956); City of West Point v. Barry, 218 Miss. 739, 67 So. 2d 729 (1953); and Warren v. City of Tupelo, 187 Miss. 816, 194 So. 293 (1940), which are to the effect that the duty of a municipality to the public which uses its streets is that of reasonable care to ward against defects from overhead as well as underfoot, the words of the court in Warren, *supra* at page 825 thereof being, "Further, we are of the opinion that it is not the duty of a municipality to have a regular or continued inspection of the trees which are allowed to remain to beautify the street and for the comfort of pedestrians and the enjoyment of the owner of the fee on which the tree stands, but that the same general rule might be applied to this case as was re-announced in the Mathis case, *supra;* that the city exercise reasonable care for the people using the streets who themselves are exercising reasonable care and that the city would not be required to make an inspection of that which presented no visible signs of defects or danger such as the tree in this case. The city created nothing artificial overhead in this tree. This situation was created by the forces of nature over which the municipality had no control and this fact must be borne in mind." We see no reason, by analogy, why the hereinabove announced rule should not also apply to an abutting owner of property. We are of the opinion that the court below

was correct in refusing plaintiff's motion for a peremptory instruction on the question of liability.

The appellant also assigns as error the granting of an instruction for the defendant upon the theory that there is no liability for an injury caused by an act of God which could not have been prevented by the exercise of reasonable care and foresight. We find no error in the granting of this instruction since it was pleaded in the answer and there was proof from which the jury could have determined that the tree fell as the result of the forces of nature combined with the decayed root system of the tree. Under these circumstances the instruction was proper. City of Hattiesburg v. Hillman, 222 Miss. 443, 76 So. 2d 368 (1954), and City of West Point v. Barry, 218 Miss. 739, 67 So. 2d 729 (1953).

We have carefully studied the other instructions separately assigned as error and when they are considered together, as the law requires, we cannot say there was reversible error therein. Lamar Hardwood Co. v. Case, 143 Miss. 277, 107 So. 868 (1926) wherein this Court stated at page 290, ''We have often announced in this Court that the instructions must be taken together and be construed as a whole, one as modifying, explaining or qualifying another; and, if the instructions taken as a whole correctly announce the law applicable to the case, we will not reverse the judgment because of an improper single instruction.''

The defendant next assigns as error the verdict of the jury which was ''We the jury find the defendant not guilty,'' thus signifying, as he argues, that the jury only considered whether or not the defendant was guilty of a crime. This Court held in the case of Henson Ford, Inc. v. Crews, 160 So. 2d 81 (Miss. 1964) as follows: ''We do not feel that the verdict of the jury was so improper as to violate the test recognized by this Court, or exceed the provisions of § 1518 of the Miss. Code of 1942, Recompiled. That portion

of said §1518 which applies is as follows: 'No special form of verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein.' The basic test with reference to whether or not a verdict is sufficient as to form is whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court. This well-established rule of law has long been recognized by this Court, and we feel that the verdict, though it could have been revised or reformed at appellant's instance, is nevertheless, sufficient in form to comply with the said statutory requirements." We are of the opinion that this assignment of error is not well taken.

We have carefully considered all assignments of error and are of the opinion there is no reversible error in the case and that it should be affirmed.

Affirmed.

*Kyle, P. J., and Rodgers, Jones, and Brady, JJ.,* concur.