M. M. NESBITT v. CITY OF GREENVILLE.

1. MUNICIPAL CORPORATION. *Streets. Ordinary care.*

   Ordinary care over its streets is the measure of diligence imposed upon a municipal corporation.

2. OBSTRUCTION IN STREET. *Notice. Liability of city.*

   Though it may not appear that an obstruction in a street which proves to be dangerous and causes injury, was erected by permission of the city, it is liable if the same was continued after knowledge of its existence.

3. SAME. *Notice of defects. Ordinary care. Duty.*

   Where an obstruction in a street is created by the municipality, or permitted to be erected by another, it must take notice of such defects as ordinary care will discover.

4. STRUCTURE IN STREET. *Duty to keep in repair.*

    A structure in a public street must be erected in such manner and with such materials as to be reasonably safe, and must be kept so. Proper repairing from time to time is as much the duty of the municipality as safe construction.

5. DEFECTIVE STRUCTURES. *Diligence. Common knowledge.*

    A municipality is liable for injuries resulting from its defective structures, when by reasonable diligence it might have known of the defects. Common knowledge, the action of the elements and the like, is chargeable to a municipal corporation as in case of natural persons.

6. PRACTICE. *Peremptory instruction. When improper.*

    In an action of damages for negligence, where the defendant's freedom from culpability is not so clear as to leave no room for differences of opinion, the question of negligence is for the jury, and it is error to instruct for defendant.

7. SAME. *Contributory negligence. Instruction.*

    Where the plaintiff's want of care is relied upon as a defense, unless the evidence of contributory negligence is so plain and convincing as to show that he is debarred thereby of recovery, it is error to give a peremptory instruction for defendant.

8. NEGLIGENCE. *Street. Dangerous structure. Case.*

    Plaintiff's husband, while building a dump for the city of Greenville, on a warm day, was sitting in the shade of a water tank near by, engaged in sharpening a saw, as an incident to the main work. By the breaking of a decayed sill, which was not observable, the tank fell, killing him. The tank was erected two years before by a private citizen, and was in the street, or at the foot of it where a levee crossed. The water therefrom was used for street sprinkling, and quite generally by those in the locality for other purposes. In an action against the city for the death, *held,* error to instruct for defendant. It was for the jury to pass upon defendant's negligence and the alleged contributory negligence.

FROM the circuit court of Washington county.
HON. R. W. WILLIAMSON, Judge.

Action by appellant against the city of Greenville for damages caused by alleged negligence, resulting in the death of plaintiff's husband. The court below gave a peremptory instruction for defendant. Plaintiff appeals. The opinion contains a statement of the case.

*Jayne & Watson,* for appellant.

1. The evidence conclusively shows that the place where Nesbitt was killed was in a public street, and the city is liable. *Bell* v. *West Point,* 51 Miss., 262.

"Once a highway, always a highway." The burden of showing the abandonment of the street as such rested upon the defendant. Elliott on Roads & Streets, p. 658; *Whitfield* v. *Meridian,* 66 Miss., 570. This burden was not met.

2. To constitute contributory negligence, there must be a want of ordinary care, and a proximate connection between that and the injury. 2 Thompson on Neg., §§ 1149, 1151; Whittaker's Smith on Neg., p. 373.

The presumption is that the deceased exercised due care. Going under the tank was not *per se* negligence. It is not shown that the danger was known or could have been apprehended. There was nothing unusual or negligent in Nesbitt's going under the tank to seek shade. If he had seated himself in the sun to sharpen his saw, the reasonable inquiry would have been, why did he not get in the shade of the tank? It is for the jury, in a case like this, to pass upon the reasonableness of the conduct of parties. The deceased did no act that caused the tank to fall, and in no way brought about the accident. In no view of the case can it be said that the negligence of the deceased was the proximate cause of the injury. Whittaker's Smith on Neg., pp. 373, 378. See also 1 Thompson on Neg., 165; 41 Wis., 65; 2 Strobh., 366; *Murphy* v. *R. R. Co.,* 4 N. W. Rep., 81.

This is not a case in which one could see at once that deceased was guilty of contributory negligence. *R. R. Co.* v. *Stout,* 17 Wall., 657; *R. R. Co.* v. *Van Steinburg,* 17 Mich., 99; 29 Fed. Rep., 489; 12 At. Rep., 797; *Railway Co.* v. *Zink,* 126 Pa., 288; 45 N. W. Rep., 130; 46 *Ib.,* 21.

Before the question of contributory negligence should have been taken from the jury, it must have been shown that deceased knew of the dangerous condition of the tank, or that the defect was palpable, or that he did not use ordinary care.

3. The city is liable for defects, and it was its duty to watch for the decay of the timbers of the tank. Elliott on Roads & Streets, 645; 55 Mich., 552; *Donoho* v. *Vulcan Iron Works*, 75 Mo., 402.

If by reasonable care the city could have ascertained the dangerous condition of the tank, it was liable, though persons passing might not have observed the defects. 89 Mo., 226; 16 Kan., 388; 72 Ind., 196; *Vicksburg* v. *McLain*, 67 Miss., 4.

The city authorities must take notice of the tendency of timber to decay. 67 Pa., 55; 3 Mackey, 276; Elliott, 454.

Deceased was using the street for a legitimate purpose, which was incident to the main work in which he was engaged for the city. In such case the city cannot escape liability by disclaiming its duty toward him. 114 Ill., 222; 58 N. H., 430.

It is immaterial that the tank was erected by a private citizen, since it was in the street. Elliott, pp. 477, 485. Being in the street, it was a nuisance *per se.* *Ib.*, 478, 48.

Under its charter, the duty is imposed upon the city to keep the streets in a proper condition. Where the corporation omits to use reasonable diligence, knowing of the unlawful obstruction, it is no defense to an action for injuries occasioned thereby that it was not known to be dangerous. 91 N. Y., 137. Nor is it a defense that the obstruction was not in the traveled part of the highway. 36 Barb. (N. Y.), 303.

*Yerger & Percy*, for appellee.

1. Unless the existence of the tank at the place where located, together with its condition, made it a public nuisance, there is no ground upon which to hold the city liable. Unless an obstruction is in a public street or place where the public frequently congregates, it is not a public nuisance. 16 Am. & Eng. Ency. L., 927.

A street is a road or public way in a city or town. Elliott on Roads & Streets, 12.

The place where the tank was located was in no proper sense a street. The tank was no obstruction to travel because there was no travel except such as the tank itself created. In determining what is a nuisance, the location of the street and all the circumstances may be considered. Woods, Nuisances, 80. The tank was not a nuisance *per se,* as its existence was almost a public necessity.

2. It was the defective condition, and not the existence of the tank that resulted in the injury. The city had no knowledge of the defect. Municipal corporations are only obliged to exercise *ordinary* care over streets. *Raymond* v. *Lowell,* 53 Am. Dec., 57.

The corporation must have notice of the defects or of facts from which the existence of the defects can be inferred. There must be circumstances from which the defect could have been known. *Bell* v. *West Point,* 51 Miss., 262; *Vicksburg* v. *Hennessy,* 54 *Ib.,* 391.

Where the defect is caused by the municipality, or the structure is erected by it, then it is bound to take notice of such defects as ordinary skill will reveal; otherwise where the defect is caused by a third person. Elliott on Roads & Streets, 462, 463.

It is not enough to show notice merely of a defective sidewalk in the vicinity of the injury. The notice must be of the defect causing the injury. *Ib.*

It is not contended here that the defect which made the structure dangerous was such as the city must have known by knowing of the structure.

3. In order to recover from the municipality in a case like this, the injured person must be perfectly free from contributory negligence. 53 Am. Dec., 57. And he must have been using the street *in the usual way for travel.* 51 Miss., 262; 54 *Ib.,* 391.

If the exercise of ordinary care would have acquainted the city with the defect, a skilled mechanic should have known of the same. The degree of care which would charge the

city with knowledge, charges him with contributory neg-
ligence.

4. If we grant that the tank was in a public street, the
city is not liable.   It is not an insurer against accidents.   It
is sufficient if the streets are in a reasonably safe condition
for *traveling in the ordinary mode.*   2 Dill. on Mun. Corp.,
§ 1019; 9 Am. & Eng. Ency. L., 378.

It has even been held, in regard to highways, that any
other use of them than for the purpose of passing and re-
passing makes a person so using them a trespasser.   Elliott
on Roads & Streets, § 309.

Where the use made of the street is one that reasonable
prudence could not have anticipated, there is no duty on the
municipality in reference to it.   9 Am. & Eng. Ency. L.,
398.

Inroads have been made upon the doctrine above stated in
favor of children going upon streets for air and exercise;
but, even as to children, where they are using the street
merely for play, there can be no recovery for injuries due to
defects or obstructions.   9 Am. & Eng. Ency. L., 400, and
note.

If a mechanic, carrying on his business in the middle of a
public street, can recover for injuries inflicted under the cir-
cumstances shown here, vagrants turning the water out of
the tank and adopting it as their domicile could require the
city to keep it in good repair.

Argued orally by *H. C. Watson,* for appellant.

WOODS, J., delivered the opinion of the court.

There is much evidence in the record tending to show that
the highway at the point where plaintiff's deceased husband
received his injuries was a public street in Greenville, and we
have no reason to suppose that the peremptory instruction
of the court below had any relation to this phase of the case.

Let us examine, briefly, the evidence which was offered for

the purpose of showing negligence in the municipality in permitting an obstruction for a long while in the public street —an obstruction, as it now appears, which was dangerous to persons passing along or using such street.

The obstruction was erected by one Pace about two years before the injury complained of occurred. Whether erected by the permission of the municipality does not appear from the record; but this is not important, since the city's liability for its continuance is clear. There is no dispute as to the knowledge of the city of the existence of the structure in the street. The structure was a tank, holding seventy or eighty barrels of water, placed on a frame-work, which was itself placed on posts from four to six feet high above the surface of the street. The water which was stored in this tank was used for street-sprinkling purposes, and for consumption by citizens. It was immediately in the street, and very near the base of a levee which had been erected across the west end of the street by the board of levee commissioners. To this tank directly persons using the river water were accustomed to come for their supplies; and to it the street-sprinkler came directly also. Within about seventy feet of the tank there were two coal-yards, and all the business of these yards was conducted near it. Now and then small steam-boats landed at the foot of this street, and fishing-vessels sometimes tied up at its foot also; and persons from such boats and vessels passed up the street in question, and by this tank, from the river. Persons on foot occasionally used this particular portion of the street to reach the levee.

This tank, thus built and thus situated and thus used, suddenly fell one day in August, 1890, and in its fall the husband of appellant—who at the moment was under it—received injuries which resulted in his death. The immediate cause of the fall of the tank was found to be the breaking in two of one of the timbers constituting the frame-work upon which the tank sat. . This broken piece of timber was found to have been unsound—" water-sobbed," as the witness who testified

to this fact characterized it. The same witness had, not a great while before, discovered the "water-sobbed" and unsafe condition of this piece of timber.

We agree with counsel for appellee that ordinary care over its streets is the measure of diligence imposed upon municipal corporations, and that they are not insurers against injury to persons using the public streets.

We do not dissent from the elementary principle that before the municipality can be held liable for injuries resulting from nuisances or defects in its streets, it must have knowledge of the nuisance or the defect, and its danger. Notice there must be to charge the municipality, but this notice may be actual or constructive or implied.

Where the obstruction is created by the city itself, or where it permits an obstruction erected by another in its streets, it must take notice of such defects in the obstruction as ordinary care will discover. The structure in a street, to every part of which the entire public has the right of free access, must be erected in such manner and from such materials as to be reasonably safe, and it must be kept in this safe condition. Proper repairs, from time to time, are as much the duty of the city as a safe structure originally.

Inseparably connected with this statement is another, viz.; that a municipality is liable for injury resulting from its defective structures where, by reasonable diligence, it might have acquired knowledge of such defect. The common knowledge of mankind is chargeable to a municipality also. The knowledge of the action of the elements on structures of wood, and of the liability of timber to decay under certain conditions, is to be attributed to municipalities, just as to natural persons. The duty of the municipality to exercise ordinary care to detect such natural decay, and to guard against injuries therefrom, follows necessarily. Recurring now to the facts put in evidence to show the appellee's negligence and consequent liability, we are of the opinion that the city's freedom from culpability was not so manifestly clear as to leave no

room for differences of opinion among reasonable men, and therefore that the question of appellee's negligence should have been submitted to the jury.

Was the deceased free from contributory negligence? Was he guilty of such misuse of the street at the time he was injured as to absolve the municipality from liability in any event? The deceased was engaged in preparing in this open street the timbers necessary to the erection of a dump just beyond the levee, in the river, under a contract with the city. He had been engaged in that work, with the laborers employed by him, for two weeks or more. We take it to be true that the city had the same right to occupy such part of the street in the prosecution of this public work as might be convenient and necessary, in the same manner and to the same extent that an abutting lot-owner may be permitted to employ a part of the street in the erection of a building upon his lot. Presumably, too, the deceased was using the street with the knowledge and under the permission of the municipality. While thus lawfully engaged in the street, the deceased, as an incident to his work, had occasion to sharpen a saw; and in order to do this piece of work, incident to the main enterprise, he placed himself for a few minutes under this tank, in a part of the public street, there being no apparent danger from the structure, and while so situated was fatally injured by the fall of the tank. Suppose he had stood outside the edge of the tank while engaged in his incidental work of saw-sharpening; suppose he had been simply standing near it, supervising the work of his hands, and the injury had occurred, Would he have been so clearly guilty of contributory negligence, or such misuser of the street, as to leave no room for difference of opinion as to his culpability? On all the facts in the case before us, can it be affirmed that only one conclusion can be drawn by reasonable men? Would all reasonable men certainly draw the same inference of contributory negligence from all the evidence in the case?

Was there nothing material, of fact or inference, as to which reasonable men might not honestly differ?

We intimate no opinion as to the negligence of deceased, but we are of the opinion that the question should have been submitted to the jury.

*Reversed and remanded.*