431 So.2d 475 (1983)
CITY OF JACKSON, Mississippi
v.
Don K. LOCKLAR.
No. 53674.
Supreme Court of Mississippi.
May 4, 1983.
*476 Gay Dawn Horne, Eugene C. Stone, Jackson, for appellant.
Malouf & Malouf, Robert A. Malouf, Jackson, for appellee.
Before BROOM, PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
On December 13, 1980, Don K. Locklar and his automobile encountered a defective and negligently maintained water system manhole cylinder at the intersection of Louisiana Street and Virginia Street in the City *477 of Jackson. He suffered painful and disabling personal injuries, as well as property damage.
On February 19, 1981, Locklar, the plaintiff below and appellee here, filed this action in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Locklar named the City of Jackson, Mississippi, appellant here, as the sole defendant. He charged that the City of Jackson had negligently maintained its streets and, particularly, that it had allowed to exist a dangerous and defective condition at the intersection of Virginia Street and Louisiana Street. The jury returned a verdict for Locklar and assessed his damages at $27,000.00.
The City of Jackson then timely filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, or, in the alternative, for a remittitur. Upon denial of these motions, the City of Jackson has perfected this appeal.

II.
We will summarize the facts of this case. Because of the jury's verdict in favor of Locklar, we will resolve all conflicts in the evidence in his favor. We will also draw in Locklar's favor all reasonable inferences which flow from the testimony given.
On the evening of December 13, 1980, yuletide merriment was Locklar's chosen fare. He joined several friends at the Scotch Maid Lounge in Jackson. All enjoyed several hours of reminiscing and revelry. The spirit of the season led him to partake of other spirits. Still, there is no evidence that Locklar was drunk or substantially intoxicated when he parted company with his friends near 10:00 o'clock.
On the way home, Locklar had his unfortunate encounter with a street in Jackson. He was proceeding in an easterly direction on Virginia Street. At the intersection of Virginia and Louisiana Streets, Locklar stopped for the stop sign controlling eastbound traffic. He began to enter the intersection. An instant later Locklar's automobile came to a jolting halt. He was thrown against the steering wheel and windshield. A protruding manhole cylinder was the culprit.
The manhole cylinder is on the west side of the intersection of Virginia and Louisiana. It is in the center of Virginia Street. One approaching from the west (as Locklar was) encounters a slight dip in the road before reaching the manhole cylinder.
The evidence was uncontradicted that the cylinder protruded above the asphalt surface of the street. The only question was how high. Locklar, who checked it the next day, said that the protrusion was approximately five inches. Tracy Davis, who drove the wrecker that towed Locklar's car in, said it was about three inches high. Dawn Sutton, who lived near the intersection of Louisiana and Virginia, said the cylinder was protruding above the level of the street about three or four inches. Joyce Kennedy, who also lives in the area, set the protrusion as between two to three inches on the night in question.
Locklar's theory, which was necessarily accepted by the jury, was that the front end of his car dipped immediately before reaching the manhole cover. Either his front bumper or the front cross-member of his 1975 Ford encountered the fixed, immovable manhole cylinder. The immovable object easily thwarted the substantial but, as it turned out, not irresistible force. As a result of the impact, Locklar's automobile sustained a seriously bent frame and was a total loss. No other explanation for what happened to Locklar and his automobile was seriously offered.[1]
The critical issue at trial was whether the City knew of the condition of the manhole cylinder and the danger it posed. Dawn Sutton, who, as indicated above, lives *478 at the intersection of Louisiana and Virginia, gave the history. She covered a period of approximately two and one-half years before this accident. Sutton recalled quite a few vehicles having come into contact with the manhole, often several a week.
Joyce Kennedy had lived in the neighborhood since 1975. She testified that she hit the manhole in June of 1980 and damaged her car. She reported this incident to the City. She also confirmed that on not infrequent occasions other cars would strike the manhole.
Jessie Jones lives two houses from the intersection. She, too, recalled five or six automobiles striking the protruding manhole before Locklar's pre-Christmas encounter.
The City offered testimony that it had no record of a report of any dangerous or defective condition at the intersection of Louisiana and Virginia Streets. The City also offered testimony of a maintenance worker to the effect that he was familiar with the area and was aware of no danger.
In the present setting the evidence was more than sufficient to establish that the manhole cylinder was protruding at a dangerous level. The City of Jackson either had knowledge of this or had more than reasonable opportunity, if it were diligent in the maintenance of its streets, to obtain such knowledge.

III.
We are here called upon to review a verdict returned by a duly empaneled and sworn jury. The scope of our review in this context is well settled in this state. In General Tire and Rubber Co. v. Darnell, 221 So.2d 104 (Miss. 1969), this Court held that
"When the court considers whether the defendant is entitled to a judgment as a matter of law, the court should consider the evidence in the light most favorable to plaintiff, disregard any evidence on the part of defendant in conflict with that favorable to plaintiff, and if the evidence and reasonable inference to be drawn therefrom would support a verdict for plaintiff, the jury verdict should not be disturbed." 221 So.2d at 105.
This rule has been reaffirmed in Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975) and in many cases decided since.
On a motion for judgment notwithstanding the verdict, the trial court must consider all of the evidence  not just that evidence which supports the non-movant's case  but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable men could not have arrived at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Some guesswork and speculation are necessarily involved in practically all jury verdicts, including those no one would dream of suggesting be disturbed.
These standards, of course, derive from many decisions of this Court. Beyond that, the limited power of the trial court to review a jury's verdict is a function of constitutional mandate. Miss. Const. (1890) Art. 3, § 31. The rules applied here find further undergirding in an enactment of the legislature. Miss. Code Ann. § 11-7-17 (1972). Even without these constitutional and statutory considerations, the familiar rules stated above would necessarily evolve as a matter of institutional necessity.
We emphasize that our powers on appellate review are even more restricted. Our institutional role mandates substantial deference to the jury's findings of fact and *479 to the trial judge's determination whether a jury issue was tendered. When a verdict is challenged via appeal from denial of a motion for j.n.o.v., we have before us the same record the trial judge had. We see the testimony the trial judge heard. We do not, however, observe the manner and demeanor of the witnesses. We do not smell the smoke of the battle. Cf. Culbreath v. Johnson, 427 So.2d 705, 708 (Miss. 1983). The trial judge's determination whether, under the standards articulated above, a jury issue has been presented, must per force be given great respect here.
That Don Locklar failed to show exactly how the manhole cylinder "stopped" his car profits the City of Jackson nothing. The substantial evidence that the manhole cylinder did protrude some number of inches above the street surface, that Locklar's car obviously encountered some substantial fixed object, that his car was found stopped over the manhole cover, are certainly sufficient to have allowed the jury to infer reasonably that the protruding manhole cylinder was the cause of this accident.
The trial judge held that Locklar had tendered sufficient evidence to support the jury's verdict on this issue. Similarly, the trial judge held that a jury issue had been tendered on the question of the City of Jackson's actual or constructive notice of the defective or dangerous condition. The trial judge necessarily held that, under the principles reviewed above, he was without power to disturb the verdict of the jury.[2]

IV.
No resort to Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), is necessary to establish the proposition that a municipal corporation in this state may be liable in tort to persons injured by dangerous or defective conditions on the city's streets. That exposure to liability is grounded in the positive law of this state. It has been recognized and settled for at least 100 years. See, e.g., Whitfield v. City of Meridian, 66 Miss. 570, 575, 6 So. 244 (1889); Nesbitt v. City of Greenville, 69 Miss. 22, 29, 10 So. 452 (1891). It has been decades since anyone has suggested that a municipality should have a sovereign immunity when faced with suits such as that brought by Don Locklar.
The standard of care imposed upon the city by tort law is similarly well settled. A municipality is under the duty to exercise reasonable care to keep its streets reasonably safe for those using them with reasonable care. City of Hattiesburg v. Hillman, 222 Miss. 443, 449, 76 So.2d 368, 370 (1955). A municipality is not an insurer of the safety of motorists on its streets. Warren v. City of Tupelo, 187 Miss. 816, 824, 194 So. 293, 295 (1940). These premises were recognized as early as 1891 in Nesbitt v. City of Greenville, supra, when the Court stated that
"Ordinary care over its streets is the measure of diligence imposed upon municipal corporations, and, .. . they are not insurers against injury to persons using the public streets." 69 Miss. at 29, 10 So. at 452.
As indicated above, the evidence at trial was practically uncontradicted that a dangerous or defective condition existed on the evening of December 13, 1980, at the intersection of Louisiana and Virginia. The City's brief here makes occasional half-hearted references to the "alleged defective manhole". The central proposition urged, however, is that the City had not been put on notice. More precisely, the City argues that the evidence was legally insufficient to support a jury finding that the City of Jackson had actual or constructive notice of the dangerous condition in question.
The City is correct on its legal principles. Mere proof of a defective condition in the streets, no matter how dangerous, is *480 not sufficient to show breach of the City's duty to maintain its streets safely. A would-be plaintiff must go further and show that the City had actual or constructive knowledge of the defect.
Factors to be considered on the question of constructive notice, as enumerated in City of Greenville v. Middleton, 124 Miss. 310, 86 So. 804 (1921), include
"the length of time the defect has existed, the nature or character thereof, the publicity of the place where it exists, the amount of travel over the street, and any other factors or circumstances in evidence which tend to show notoriety". 124 Miss. at 317, 86 So. at 805.
In the final analysis the jury is charged with determining whether
"by the exercise of ordinary and reasonable care and diligence, the defect should have been discovered by the corporate authorities." 124 Miss. at 317, 86 So. at 805.
In City of Cleveland v. Threadgill, 246 Miss. 23, 148 So.2d 670 (1962), this Court affirmed municipal liability for injuries caused by a defective drain cover. The facts revealed that the cover had been in a defective condition for several months and that city employees passed nearby once a month. Liability was also affirmed where a defective catch basin had posed a hazard for approximately 15 days in a heavily traveled area. City of Hattiesburg v. Kelly, 226 Miss. 529, 84 So.2d 680 (1956).
On the other hand, a municipality has been acquitted of civil liability in a case where a telephone pole hole on the edge of a sidewalk had been unnoticed by persons in the immediate vicinity. Dow v. Town of D'Lo, 169 Miss. 240, 152 So. 474 (1934). In that case, however, the Court stated
"The fact that mere passers-by did not observe or discover a dangerous defect is not sufficient to relieve a municipality of constructive notice; but, if the defect or danger be such as not to be observable by those who constantly pass day by day or who for years have lived and labored at the location in question, constructive notice cannot be charged upon the municipality unless the danger was the result of faulty work by the municipality itself." 169 Miss. at 248, 152 So. 474.
Applying these general rules to the evidence before the Court, when that evidence is viewed in light of the principles stated in Section III above, the jury's verdict may be sustained on two bases. First, the testimony of Joyce Kennedy establishes actual notice of a problem with this particular water system manhole cylinder six months prior to December 13, 1980, the date of Don Locklar's accident and injury.
Second, the testimony of Dawn Sutton, Joyce Kennedy and Jessie Jones established that the problem with this particular manhole cylinder had existed for months, if not years. Even if it had never been reported, the testimony establishes that the defect had existed for a sufficient amount of time before December 13, 1980, so that the City of Jackson, had it been exercising reasonable and ordinary care and diligence in the maintenance of its streets, should have discovered it.

V.
Finally, we reach the question of damages. The evidence established that as a proximate result of his encounter with the manhole cylinder, Locklar sustained a fractured sternum, a fractured wrist, damaged teeth and mouth, and numerous facial lacerations around the eyes and forehead. He experienced considerable bleeding on the scene. He no doubt underwent considerable pain and suffering.
At trial Locklar proved out of pocket medical expenses in the amount of $665.00, the cost of projected future dental work of $2,965.00, lost wages of $140.00. His automobile was a total loss and was assigned a reasonable value of $1957.00.
In this context the City of Jackson challenges the $27,000.00 award made by the jury as being excessive.
The standard of review employed by this Court when a jury's damage award is under attack is essentially the same as articulated in Section III. The amount of damages sustained by Don K. Locklar expressed *481 in monetary terms is a matter of fact. The jury's verdict is a finding of fact. Unless we can say that no rational jury could on this proof have assessed damages of $27,000.00, the award must be left undisturbed. We will not vacate or reduce a damage award unless it is so out of line as to shock the conscience of the Court. Anderson v. Jaeger, 317 So.2d 902, 907 (Miss. 1975).
It may be argued that the jury verdict in this case was on the high side. The only permanent injury suffered by Locklar is to his teeth. Most probably some members of this Court, had they been sitting as triers of the fact, would have fixed damages at a lower sum. In reviewing the jury's award, however, we are constrained by rules of law. The question is not what we would have done had we been sitting as the jury but whether, considering the evidence in the light most favorable to the plaintiff, together with all reasonable inferences which may be drawn therefrom, we can say that no reasonable jury could, on these facts, have concluded that plaintiff's damages were in the amount of $27,000.00. We can make no such statement here.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] At trial the City further sought to show that Locklar was intoxicated on the occasion in question, that he was speeding, that he did not stop at the stop sign and that otherwise his conduct was negligent and the cause of his injuries. All of these issues were submitted to the jury on proper instructions. The jury's verdict, of course, precludes our giving consideration or weight to these points here. Moreover, a protruding manhole cylinder, when encountered in the dark is indifferent to whether the driver is high or dry.
[2] Here it is important to note that the jury was well and thoroughly instructed by the trial judge. The standard of care imposed on the city was correctly articulated in Instruction Nos. P-6, P-13, D-5 and D-7. The jury was expressly advised that the city was not held in law an insurer of the safety of motorists on its streets. Instruction No. D-7. The requirements of actual or constructive notice were explained in Instruction No. D-8. The city requested and was granted more than adequate instructions on the issue of Locklar's alleged negligence. Instruction Nos. D-9 and D-11.