482 So.2d 1151 (1986)
Chester K. BURNHAM & Kenworth Truck Sales, Inc.
v.
Maurice H. JOSEPH & Fisherman's Wharf Restaurant of Miss., Inc.
No. 55301.
Supreme Court of Mississippi.
February 5, 1986.
Robert R. Marshall, Jackson, for appellants.
James L. Jones, Neil P. Olack, Watkins, Ludlum & Stennis, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
On January 10, 1983, Maurice Joseph and Fisherman's Wharf Restaurant of Mississippi, Inc. (hereinafter "Joseph") filed  and later amended  a complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against Chester K. Burnham and Kenworth Truck Sales, Inc. (hereinafter "Burnham"). The complaint *1152 alleged an indebtedness to Joseph resulting from breach of a lease contract.
On January 18, 1983, Burnham answered and filed a counterclaim asserting that Joseph had failed to make roof repairs on the leased premises and that Burnham was entitled to an award against Joseph as a setoff against any rent owed.
On August 11, 1983, the case went to trial before a jury empanelled in the Circuit Court of the First Judicial District of Hinds County. After both sides rested, counsel for Joseph moved for a directed verdict on the counterclaim. The court sustained that motion; the jury returned a directed verdict for the plaintiffs and assessed damages at $27,080.18.
Aggrieved of the lower court's judgment, Burnham and Kenworth appeal and make the following assignments of error:
1. The lower court erred in granting the plaintiff's motion for a directed verdict, denying the defendant's jury Instruction No. D-2 and D-3 and overruling the motion for the entry of a judgment n.o.v., to alter or amend the judgment or for a new trial.
2. The jury verdict was excessive and not based on the evidence.
In late 1974 or early 1975, Kenworth Truck Sales (with Chester Burnham, President and majority stockholder) entered into a lease authorizing occupancy of the property which is the subject of this litigation. At that time, the property was owned by Mr. Bill Cook (or one of his companies, Western Materials). Several years later, Maurice Joseph purchased the premises; Burnham continued to lease the property from them. One pertinent paragraph of the lease states:
No. 7. Repairs. Lessors agree to maintain the roof and structural portion of the outside walls of the building now and hereafter located on the leased premises. All other maintenance and necessary repairs, including repainting of the interior and exterior of the buildings as required, shall be furnished by lessees at their expense. The leased premises shall be returned to lessors on termination of this lease in as good condition as when received, reasonable and ordinary wear and tear excepted. For the duration of this lease, lessees shall keep the leased premises in a slightly (sic) condition, and on termination of the lease shall promptly make such repairs as may be necessary to comply with this obligation or pay the reasonable expenses of so doing.
The lease was last renewed on March 12, 1982, for a term of one year commencing on February 1, 1982 and expiring at midnight, January 31, 1983.
Under the terms of the lease renewal agreement, Burnham agreed to pay the sum of $6,025.00 as monthly rent on the first of each month. Additionally, he agreed to pay $742.37 and $266.75 on the first of every month to be applied to taxes and insurance respectively.
Burnham withheld payments for the months of December, 1982, and January, 1983, as a result of Joseph's failure to make necessary repairs to the roofs of the leased buildings. Thereafter, Joseph filed an action in the County Court to obtain possession of the premises. The County Court ruled that Burnham was indebted to Joseph for past due rent and that Joseph was entitled to immediate possession of the leased premises. The sheriff of Hinds County evicted Burnham from the property.
Joseph subsequently instituted an action in Circuit Court to recover the sum of $14,067.24 for past due monthly rentals, taxes and insurance. He also demanded, in an amended complaint, damages for the cost of repairing the leased premises and reasonable attorney's fees.
Burnham filed a counterclaim seeking a setoff against the past due rent. He claimed to have periodically lost use of one of eight buildings on the leased premises due to a leaking roof. At the conclusion of all the evidence, the Circuit Court granted the motion of Joseph for a directed verdict on the counterclaim. That motion was based on the assertion that Burnham was *1153 unable to prove his claim for loss of use with reasonable certainty.
With regard to Joseph's claim for damages arising out of Burnham's breach of the lease agreement, the Circuit Court granted a peremptory instruction for the past due rent, $14,067.24. The court also instructed the jury to award Joseph all reasonable costs and expenses (including a reasonable attorney's fee) incurred both in the collection of the rent and in the enforcement of the repair and maintenance obligations under the lease agreement. Joseph submitted statements for attorney's fees and expenses totaling $8,110.44. Finally, the court instructed the jury that if Burnham and Kenworth breached the repair clause of the lease agreement, then Joseph was entitled to the reasonable costs of making the required repairs to the leased premises. Joseph submitted a cost estimate of $7,805.00. The jury awarded Joseph $27,080.18.
Burnham's initial assignment of error centers around his counterclaim, the dismissal of which precluded any setoff against damages assessed against him. In that counterclaim, Burnham sought damages in the amount of $20,000.00. He asserted that Joseph had failed to make necessary repairs to the roof of one of the leased buildings and, as a result, rain was able to enter that building and impair its use as a body shop.
At trial, Burnham attempted to enumerate the damages sustained as a result of Joseph's failure to adequately repair the roofs on two of the leased buildings. There was ample evidence, both via testimony and exhibits, which depicted the porous nature of the roofs. The evidence regarding the amount of loss resulting from the leakage is apparently what led to a directed verdict on the counterclaim.
Chester Burnham testified that the amount of damages had been computed using National Weather Service tabulations of rainfall. His accountant and manager had computed the number of man hours lost when the work area was wet and unsafe.
Ken Curtis, the Kenworth Sales Manager, testified that he had computed the fixed body shop costs, the net costs of the body shop, the per hour rate charged by the body shop, the daily records of body shop employees, and the salaries of those employees. Using climatological records, he had determined that 61 days (between January 1, 1982 and January 31, 1983) had been lost in the body shop as a result of rain. After relating specifics of salaries and other costs details, Curtis told the jury that the exact amount lost as a result of the aforementioned rain was $31,043.00.
In Mississippi, damages must be shown with reasonable certainty and not based merely on speculation and conjecture. Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965) on appeal after remand, 221 So.2d 706 (Miss. 1969); Hudson v. Farrish Gravel Co., 279 So.2d 630 (Miss. 1973). However, the difficulty of ascertaining damages should not bar the suit. Travelers Indemnity Co. v. Davis Wholesale Drug Co., 234 So.2d 604, 605 (Miss. 1970).
The question of judgment as a matter of law was discussed in City of Jackson v. Locklar, 431 So.2d 475 (Miss. 1983). Although Locklar involved judgment notwithstanding the verdict, the principle espoused is the same as in the instant case.
On a motion for judgment [as a matter of law], the trial court must consider all of the evidence  not just that evidence which supports the non-movant's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable men could not have arrived at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might *1154 reach different conclusions, the motion should be denied... .
Id. at 478.
In the case before us, there was substantial evidence on which the jury might have found for Burnham on the counterclaim. It is no answer to say that the jury's verdict would have involved some speculation and conjecture. "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required." Locklar, 431 So.2d at 478.
Here, there is no question about the existence of damage. Compare, First Nat'l Bank of Jackson v. Olive, 330 So.2d 568 (Miss. 1976). Neither is this a situation where the jury must rely solely on speculation and conjecture in order to apportion damage attributable to the defendant. Compare, Dennis v. Prisock, supra; Hudson v. Farrish Gravel Co., supra; Jackson v. Swinney, 244 Miss. 117, 140 So.2d 555 (1962). In the instant case the question is, rather, one regarding the amount of damage and is entirely dependent on the weight and credibility afforded the witnesses' testimony. It is well established that the function of the jury is to determine the weight and worth of the evidence as well as the credibility and veracity of witnesses. See, e.g., Williams v. State, 463 So.2d 1064, 1069 (Miss. 1985); Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982); Board of Supervisors of Jackson County v. Standard Oil Co., 353 So.2d 1137 (Miss. 1977); Independent Life & Accident Ins. Co., v. Mullins, 252 Miss. 644, 173 So.2d 663 (1965).
For the foregoing reason, we hold that the trial court's dismissal of the counterclaim was error. As this will require a new trial, we need not address the appellants' second assignment of error; however, the following observations have been made and require attention.
Under the repair provisions of the lease agreement, the leased premises were to be returned to the lessors "in as good condition as when received, reasonable and ordinary wear and tear excepted." The burden of proving that Burnham had failed to so maintain the property devolved upon Joseph. At trial, no testimony was offered as to the condition of the premises at the time of occupancy other than that of Chester Burnham. Burnham steadfastly maintained that the property was in substantially the same condition when returned to Joseph as it had been when originally occupied. We trust that, upon retrial, the court will hold the plaintiff to his burden of proof; without evidence that the lessees failed to comply with the repair and maintenance provisions of the lease, there can be no award of damages (or attorney's fees) based on those provisions.
We also trust that the above will be noted during preparation of jury instructions. In light of the foregoing, Instruction P-5 is particularly onerous. It states in part:
You are instructed to include in your award to the plaintiffs Maurice H. Joseph and Fisherman's Wharf .. . all reasonable costs and expenses, including reasonable attorney's fees, incurred ... in the enforcement of any obligations under the Lease Agreement or the Lease Renewal Agreement.
This instruction is peremptory in nature and may be read to assume facts not in evidence, i.e., that the defendants failed to meet their obligations under the repair and maintenance provisions of the lease agreement. There is no evidence that they did not meet those obligations. The jury may have been easily misled.
Due to the erroneous dismissal of the appellants' counterclaim, we reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.