493 So.2d 1274 (1986)
SHELL OIL COMPANY
v.
Garry MURRAH, et ux.
No. 55802.
Supreme Court of Mississippi.
September 3, 1986.
James B. Galloway, Eaton, Cottrell, Galloway, Lang & Stone, Gulfport, for appellant.
Robert P. Shepard and A.M. Murphy, Murphy & Shepard, Lucedale, for appellee.
Before WALKER, C.J., and DAN M. LEE and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
This is an appeal from the Circuit Court of George County by the defendant, Shell Oil Company, appellant here, from an adverse jury verdict and subsequent judgment. The jury awarded $12,645.00 in actual damages for appellant's trespass on the lands of appellees. This was reduced by remittitur to $6,250.00. The verdict also awarded $47,355 punitive damages. The appellant was represented in the lower court and here by competent counsel; however, the employment of counsel in this matter was the closing of the gate after the cows were in the field.
The factual situation here is not materially unlike that in Seismic Petroleum Services, Inc. v. Ryan, 450 So.2d 437 (Miss. 1984), and we believe that case and the others there cited control here as to the appellant's argument relating to the issue of punitive damages.
In Seismic, supra, Seismic representatives contacted Ryan and obtained permission for a seismograph crew to run a line over Ryan's property. Ryan gave authorization for an entrance on the land for the purpose of a survey to locate the place for the line; however, Seismic was not to run the line without further permission. Ryan's limited permission apparently was never conveyed to the workers, inasmuch as the machinery was brought onto the property and the line was partially run before Ryan, with the assistance of the sheriff, removed the trespassers. As here, good faith was claimed. The vice president and part owner of Seismic stated that if the matter had come to his attention he would have moved the line around Ryan's property but thought his company had a verbal permit. Punitive damages were awarded and the award was upheld. Judge Roy Noble Lee stated the test as follows:

*1275 When a person is charged with committing a willful and wanton trespass and cutting trees upon another's property without permission, the standard by which to measure him is whether or not a reasonable man under like circumstances would have gone upon the property, committed a trespass thereon and would have cut trees of the property owner.
The jury answers the question as to whether or not punitive damages should be imposed and the amount thereof.
450 So.2d at 440.
We now review the evidence in the light required in City of Jackson v. Locklar, 431 So.2d 475 (Miss. 1983). There Judge Robertson wrote as follows:
On a motion for judgment notwithstanding the verdict, the trial court must consider all of the evidence  not just that evidence which supports the non-movant's case  but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable men could not have arrived at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
... .
The standard of review employed by this Court when a jury's damage award is under attack is essentially the same as articulated [above]... . Unless we can say that no rational jury could have on this proof assessed damages ..., the award must be left undisturbed. We will not vacate or reduce a damage award unless it is so out of line as to shock the conscience of the Court.
431 So.2d at 478, 480-81.
Bobby and Frances Fewell owned a 40-acre tract in George County and on February 6, 1982, they conveyed the east 12.5 acres thereof to the appellees in this cause. Thereafter, Shell began to "permit" (obtain written permission) land in the area for seismic exploration. Shell's title check consisted of nothing more than a review of the tax rolls. Neither the sectional index nor general index was referred to. The "title examiner" had no formal training nor company manual or any other information upon which to conduct his search. He testified that he was under "hurry up" orders from Shell.
After this title work was done, another employee began contacting the landowners and when Mrs. Fewell was contacted she told them of the ownership of the 12.5 acres by the appellees. It appeared to Mrs. Fewell from Shell's map that the line would cross the Murrahs' property. Incidentally Mrs. Fewell had formerly been a real estate agent. Mrs. Fewell further informed the company not to go on the Murrahs' land.
Nevertheless, though it was claimed to be simple negligence only, the line was in fact run across the land of the Murrahs and not discovered by them until several hundred trees had been damaged or destroyed, and all the work done except the discharge of explosives in some several holes that had been dug. Heavy machinery had been brought onto the property and roads made in a meandering or weaving fashion.
It is also well to point out that the jury had before it for consideration the testimony of Mr. Murrah wherein he stated that his 12.5 acres had been surveyed and that ribbons were tied on the side of the road, and that there was a fresh cut line indicating the new survey. Shell's employee and witness, Robert Futrell, found this line on his first day on the property. Shell's witness, Valentine, who apparently was in charge of the project, stated that these things had happened before.
It is obvious then that the factual situation here is at least comparable, if not more *1276 favorable to punitive damages than that in Seismic. Consistency in opinions then requires that we affirm this case. Other cases supporting affirmance are Kelly v. Welborn, 217 Miss. 16, 63 So.2d 413 (1953), where a trespasser was warned not to cut timber on the owner's land. It was admitted that the land title had not been checked, and the trespasser claimed that he had purchased the timber from a third party. This was an action for statutory penalty for cutting trees. However, the Court there stated that the conduct was "reckless, willful and wanton"  the same conduct required for punitive damages. Also, Cumberland Telephone & Telegraph Co. v. Odeneal, 26 So. 966 (Miss. 1899), and Sansing v. Thomas, 211 Miss. 727, 52 So.2d 478 (1951), upheld an instruction on punitive damages on similar evidence.
We think that all questions of damages constituted questions for the jury, and we cannot say that the verdict was not supported by the evidence. The standard for review previously noted requires an affirmance.
Appellant urges that the court should not have given two instructions relating to punitive damages. No specific objection to the instructions is found in the record; therefore, under Rule 42 of this Court this assignment should not be considered. However, what has been said above applies thereto.
The appellant contends that there was error in admitting evidence of the actual damages in excess of $1,000.00. During the course of discovery, the Murrahs, in accord with Miss.R.Civ.P. 36, made requests for admission from Shell Oil Company. Requested admission No. 13 stated: "That plaintiffs are entitled to actual damages in the amount of $1,000". There followed seven other requested admissions, 14-20, which were identical to requested admission 13, except for the amounts, $2,000, $5,000, $10,000, $25,000, $50,000, $100,000 and $175,000, respectively. In response, Shell admitted that the plaintiffs were entitled to actual damages of $1,000, but denied requested admissions 14-20, involving larger amounts. At trial, Shell objected to any evidence of damages that exceeded the $1,000, to which Shell had admitted its liability in requested admission 13. Indeed, at the outset of the trial, the court had read to the jury a list of admissions, including: "9, that plaintiffs are entitled to actual damages in the amount of $1,000". The court allowed the evidence on damages to come in. Mr. Murrah then stated that the difference between the land value before and after the trespass was $6,250.
Miss.R.Civ.P. 36(b) reads, in part: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Shell Oil argues that an admission has the effect of a stipulation, a point made in the official notes by the Advisory Committee on Federal Rules. Accordingly, the question of damages is settled, since both parties are bound by Shell's response to the Murrahs' request for admission. This reading of the rule, though, is too broad.
There is a dearth of case law with which to construe Miss.R.Civ.P. 36, except to recall Justice Robertson's admonition in Educational Placement Services v. Wilson, 487 So.2d 1316, 1318 (Miss. 1986), where he writes: "Necessary and practicable leniency ... appear to have generated an air of benevolent gratuity about the administration of Rule 36. But, of course, there is no gratuity about it. Courts cannot give or withhold at pleasure. Rule 36 is to be enforced according to its terms." Yet, the fact that it is identical in language, where pertinent, to Fed.R.Civ.P. 36 allows the court to look to the interpretation of that Rule as a guide.
8 Wright and Miller, Federal Practice and Procedure, § 2264 (1970), states, "The admission does not bind the party who requested it. Even though he introduces the response in evidence he is free to produce other evidence contradicting the facts contained in the response." Nevertheless, the plaintiff argues that the 1970 amendments to Fed.R.Civ.P. 36, which includes the *1277 phrase "conclusively established," noted above, necessarily binds both parties to the admission. Yet the Advisory Committee note says, in part: "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." (emphasis added) It is clear then that the purpose of the rule is to bind the party making the admission, not the party requesting it. Other states applying their own rules of civil procedure are consistent with this approach; for example, Florida's rule, which like Mississippi's practically mirrors Fed.R.Civ.P. 36, does not bind the requesting party to an admission. Black v. Palm Beach Co., 342 So.2d 1034, 1035 (Fla. App. 1977).
We, therefore, find that this assignment is without merit.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.