## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 92-CA-00362-SCT

*FERRIS DUCKER AND IRENE DUCKER, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF HOLLIE D. DUCKER, THEIR DAUGHTER*

*v.*

*WILLIAM R. MOORE, ADMINISTRATOR OF THE ESTATE OF JOE K. MOORE, M.D., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/14/91 |
| TRIAL JUDGE: | HON. W. R. (WILLIAM) LAMB |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | D. RONALD MUSGROVE |
| ATTORNEYS FOR APPELLEE: | SHELBY GOZA |
| | BENJAMIN H. SANDERS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 9/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/96 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Ferris and Irene Ducker appeal a January 21, 1991, order of the Lafayette County Circuit Court denying their motion for a new trial, or in the alternative, for a j.n.o.v., after a jury found that the estate of Dr. Joe K. Moore was not liable for complications their daughter, Hollie, suffered after injuring her wrist. Although the circuit court erroneously allowed a jury instruction using the phrase "error of judgment," which we have found to be confusing to jurors, the issue was not properly preserved for review. There being no merit to the remaining issues raised by the Duckers, we affirm the decision of the court below.

I.

¶2. On April 18, 1986, ten-year-old Hollie Ducker was treated at the Oxford-Lafayette County Hospital for injuries sustained in a skating accident. She was diagnosed with an "impacted fracture to the left distal radius with dorsal displacement of the distal fracture fragment." The so-called Salter II fracture, where a piece of bone breaks off and remainder moves out of place, was located on her left arm, where the wrist meets the hand.

¶3. In the emergency room, Dr. Moore, the treating orthopedist, employed the standard Bier block anesthesia used to set a fracture such as Hollie's. The procedure involves applying a tourniquet between the elbow and the shoulder and administering the anesthesia, Lidocaine, through an injection in the arm. Hollie developed splotching, swelling and blood blisters during the procedure. Dr. Moore diagnosed the problem as compartment syndrome, which occurs when the blood pressure in a particular part of the body reaches a point where it shuts off circulation to the muscles and nerves. Hollie was transferred to Baptist Memorial Hospital in Memphis, Tennessee, for further treatment.

¶4. Hollie's left arm is slightly shortened as a result of the fracture, a condition which may be corrected with surgery. She suffers some pain and weakness in the arm, as well as scars from the splotching.

¶5. The Duckers filed a complaint against Dr. Moore's estate in the Lafayette County Circuit Court on April 18, 1988. They alleged that Dr. Moore had breached his duty of care in treating Hollie by prescribing or not prescribing certain medications, in his administration of the anesthesia, and in his failure to properly monitor Hollie's condition. The Duckers sought compensatory damages for medical expenses and the personal injuries suffered by their daughter. A trial was held on January 8, 1991. The jury returned a verdict in favor of Dr. Moore. The Duckers' motion for a new trial, or in the alternative, for j.n.o.v., was denied by the circuit court on January 21, 1991.II.

¶6. The Duckers first complain that the trial court erred in granting Jury Instruction D-5, which provided:

> You are instructed that the fact that a less than desirable result followed Dr. Moore's treatment of Hollie Ducker does not, in itself, require you to find that Dr. Moore failed in any duty owed to Hollie Ducker. *A competent physician is not liable per se for a mere error of judgment,* or for the occurrence of an undesirable result. A physician such as Dr. Moore, in treating a patient, is not an insurer of favorable results. Furthermore, the fact that a doctor may have chosen between two acceptable methods of treatment is not medical negligence or breach of the standard of care.

> Since a physician does not guarantee the success of his treatment, he is not responsible for the lack of success of the treatment, unless that lack results from his failure to exercise that degree of care exercised by other physicians practicing in the same field and under the same conditions. *The fact that Hollie Ducker had difficulty does not raise even a presumption of improper care, skill or diligence on Dr. Moore's part.*

(Emphasis added). In ***Day v. Morrison,*** 657 So. 2d 808 (Miss. 1995), we found that so-called "bona fide" or "good faith" error in judgment instructions should not be used in medical malpractice cases because of their tendency to confuse the jury. ***Id.*** at 813. Although the Duckers' attorney cannot be faulted for not foreseeing our decision in ***Day***, no contemporaneous objection to this instruction appears in the record presented for our review and thus, the issue cannot now be raised for the first time on appeal. ***North River Homes, Inc. v. Bosarge***, 594 So. 2d 1153, 1163-1164 (Miss. 1992); ***Mutual Life Insurance Co. of New York v. Estate of Wesson,*** 517 So. 2d 521, 531 (Miss. 1987), ***cert. denied,*** 486 U.S. 1043 (1987); ***Shell Oil Co. v. Murrah,*** 493 So. 2d 1274, 1276 (Miss. 1986). ***See also Nichols v. Tubb,*** 609 So. 2d 377, 388 (Miss. 1992), ***cert. denied,*** 114 S.Ct. 63, 126 L.Ed.

2d 33 (1992)(no review of refused jury instructions when plaintiffs made no record of refused instructions). Moreover, the motion for a new trial did not specifically address Instruction D-5; rather it made many sweeping assignments of error including that the trial court erred "in giving all instructions tendered by the Defendant which were objected to by the Plaintiffs." *See Walker v. Graham,* 582 So. 2d 431, 432 (Miss. 1991)(where no objections to jury instructions raised in motion for new trial, objection waived on appeal). While we are therefore precluded from reversing on the basis of an erroneous jury instruction, we again caution against the use of the language "mere error of judgment" when instructing juries in medical malpractice cases.

### III.

¶7. The Duckers next assign as error the trial court's limitation of the cross-examination of Dr. Moore's expert witness on the possibility that Hollie did not receive proper medication. Experts for both parties relied on hospital records to testify that Hollie was not given an improper dosage of medication. Further, there was no evidence that Hollie was not given the proper medication. The Duckers' own expert, Dr. Friedman, conceded that only the timing of the removal of the tourniquet was at issue, not the medicine administered to Hollie. The scope of cross-examination is within the discretion of the trial court. *Sayles v. State,* 552 So. 2d 1383, 1386 (Miss. 1989). We cannot say that the circuit court abused its discretion in refusing to allow speculative and irrelevant testimony.

### IV.

¶8. The Duckers further assert that the circuit court erred in granting Dr. Moore's motion in limine which disallowed testimony regarding his drinking and drug use at social functions. Despite Mr. Ducker's testimony that Dr. Moore seemed "preoccupied" while treating Hollie in the emergency room, and that his eyes appeared dilated, though Ducker admittedly observed his eyes only from an angle, the Duckers' attorney told the trial judge that he had no evidence to offer of Dr. Moore's alleged alcohol or drug abuse. Since admission of testimony is within the discretion of the trial judge, we find that there is no merit to this argument. *Sperry-New Holland v. Prestage,* 617 So. 2d 248, 262 (Miss. 1993).

### V.

¶9. The circuit court overruled the Duckers' motion in limine to exclude the testimony of Dr. Beckett Howorth, a retired Oxford, Mississippi surgeon. Mr. and Mrs. Ducker assert that Dr. Howorth should not have been allowed to testify as an expert because he was not certified in orthopedics, that his son, Andrew, was a member of the law firm representing Dr. Moore's estate, and that his testimony was cumulative and intended to sway the jury. Contrary to the assertions in the Duckers' briefs, Dr. Howorth's testimony indicated his familiarity with the Bier block procedure at issue. We have held that "[a]n expert may be properly qualified as an expert based on his knowledge, skill, experience, training, education, or a combination thereof." *Thompson v. Carter*, 518 So. 2d 609, 614 (Miss. 1987). Given the wide latitude afforded the trial court in qualifying expert witnesses, we cannot say that the judge abused his discretion in allowing Dr. Howorth to testify. *Palmer v. Biloxi Regional Medical Center,* 564 So. 2d 1346, 1356 (Miss. 1990); *Brown v. Mladineo,* 504 So. 2d 1201, 1202 (Miss. 1987). We note further that Dr. Howorth's son was not an attorney of record in this case, and on redirect examination, Howorth stated that he had not discussed the case with him.VI.

¶10. Finally, the Duckers contend that the jury verdict was against the weight of the evidence. This Court generally gives great deference to a jury's findings and will set aside a verdict only when it is contrary to the weight of the evidence and credible testimony. Moreover, when the evidence is conflicting, we defer to the jury's determination of the credibility of witnesses and the weight of their testimony. *Sessums v. Northtown Limousines, Inc.,* 664 So. 2d 164, 168 (Miss. 1995); *Odom v. Roberts,* 606 So. 2d 114, 118 (Miss. 1992). There is substantial evidence in the record to support the jury's findings.

VII.

¶11. Although we have found that use of the "mere error of judgment" language when instructing the jury in medical malpractice cases is confusing to jurors and may constitute reversible error, the issue was not properly preserved for appeal. There is no merit to the other issues raised by the Duckers. Accordingly, we affirm the judgment of the court below.

¶12. **JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**