¶ 14. Because I find that Cantrell presented no evidence that Dr. Green breached the standard of care in his post-operative treatment, I respectfully dissent. I find that substantial evidence supports the trial judge's determination, and further that the record does not enable this Court to review the most crucial evidence presented — Cantrell's in-court physical demonstration. Therefore, I would affirm the trial court's grant of a directed verdict in favor of Dr. Green and MOC.
 ¶ 15. Dr. Dee's criticism was limited to Dr. Green's post-operative care.[1] His criticism was based on the FAC Dr. Dee purported to observe in Cantrell's right hip on May 27, 2003, together with his assumption that the condition was present on June 20, 2000, the last date on which Dr. Green examined Cantrell. To this end, Dr. Dee testified thatif the thirty-degree FAC existed when Cantrell was last treated by Dr. Green, then he should have identified the condition and ordered "focused physical therapy" to correct it. Dr. Dee admitted that he would have no valid criticism of Dr. Green's post-operative care if the FAC was not present on June 20, 2000. The issue then is whether Cantrell had an FAC on June 20, 2000.
 ¶ 16. The only evidence to suggest that the condition was present on the date in question was the testimony of Dr. Dee himself, who opined that Cantrell had an FAC of thirty degrees on June 20, 2000. Dr. Dee arrived at this conclusion because, in his opinion, there was no other way he could explain why Mr. Pettigrew measured an LLD of an inch and a half, when he (Dr. Dee) knew that the true measurement of the LLD was two centimeters. However, Dr. Dee did not review Dr. Green's deposition or view the x-rays of Cantrell's hip taken by Dr. Terrell, nor did he take an x-ray of Cantrell's hip when he himself examined her in 2003.
 ¶ 17. Beyond Dr. Dee's opinion, the record is devoid of evidence that an FAC existed on June 20, 2000. During the course of her physical therapy, Cantrell was regularly visited by registered nurses. After each visit, the nurses completed a report which had a place for the nurse to check if a contracture was present in Cantrell's hip. Not once was a notation made that a contracture was present. At the time of Cantrell's discharge from physical therapy on June 27, 2000, Mr. Pettigrew's physical therapy evaluation noted that Cantrell's range of motion in her right hip for abduction was "within normal limits," and for adduction was "within functional limits."
 ¶ 18. In their examinations of Cantrell, neither Dr. Green, Dr. Terrell nor Dr. Buggs noted or recorded a fixed abduction deformity.[2] At the June 20, 2000 visit, Dr. Green addressed Pettigrew's and Cantrell's *Page 1007 
anxieties about the LLD. After conducting a physical examination and taking x-rays of Cantrell's hip, Dr. Green determined that Cantrell had an LLD of one and a half centimeters and ordered that she advance to a full weight bearing walk in her physical therapy. Over the span of two years following the surgery, Cantrell saw two other orthopaedic surgeons, Dr. Terrell and Dr. Buggs. Dr. Terrell's office record from October 2000 reflects that Cantrell had an "excellent range of motion" in her right hip, which Dr. Terrell noted was "properly position[ed] and sized." In June 2002, Cantrell saw Dr. Buggs who examined her and took x-rays of her right hip. Dr. Buggs did not note or describe an FAC.
 ¶ 19. In determining whether a jury issue had been presented, the trial judge relied on Ms. Cantrell's in-court physical demonstration, in which she got out of the witness stand and demonstrated her ability to move her hip, legs and pelvis.[3] The majority brands this demonstration as evidence that the FAC existed on June 20, 2000. To the contrary, I find that the in-court demonstration only established that the LLD — the difference in the length of her left and right legs — existed on June 20, 2000, as it did on the day of trial.[4] This difference of opinion should be resolved in favor of the trial judge's determination, because he was able to observe the physical demonstrations, whereas, our review is limited to a cold paper record. Jackson v. Locklar,431 So.2d 475, 479 (Miss. 1983) (citing Culbreath v.Johnson, 427 So.2d 705, 708 (Miss. 1983)) ("We see the testimony the trial judge heard. We do not, however, observe the manner and demeanor of the witnesses. We do not smell the smoke of the battle."). The issue presented in this appeal largely turns on Cantrell's physical demonstration; therefore, this appeal presents a particularly relevant situation in which the trial judge's determination of whether an issue of fact remains for the jury should be afforded great deference.
 ¶ 20. After hearing and observing all of the evidence himself, the trial judge found that there was no fact issue for the jury as to whether Cantrell had an FAC when she last saw Dr. Green on June 20, 2000. Because we are unable to review the most pivotal evidence presented in this case, I would affirm the trial court's grant of a directed verdict.
CHANDLER AND BAENES, JJ., JOIN THIS OPINION.
[1] Dr. Dee testified that Dr. Green did not breach the standard of care in the performance of the surgery by leaving Cantrell with a two-centimeter LLD. He also testified that the two centimeter LLD did not cause the FAC.
[2] Dr. Dee testified that a proper examination of a patient with an FAC by an orthopaedic surgeon would reveal the condition if present, and also that the condition would be apparent on an x-ray.
[3] Expert testimony adduced that a fixed abduction contracture is a "condition of fixed resistence" in which the hip is in a "stuck-type position" that would not move.
[4] It is undisputed that Dr. Green's surgery left Cantrell with an LLD and that Dr. Green did not breach the standard of care in his performance of the surgery by leaving her with this difference in leg lengths.